NEAL HERN, Appellant, v. SOUTHERN PACIFIC CO., OGDEN LUCIN RAILROAD CO. and GEORGE BECKHAM, Respondents.

No. 1652.  (81 Pac. 902).

1. RAILROADS—INJURIES—ACTIONS—REQUEST TO CHARGE. Where, in an action for injuries to plaintiff while about the yard of defendant railroad company, the court charged the alleged acts of negligence, defined negligence as stated in plaintiff's request, stated that plaintiff was entitled to recover, though a technical trespasser, if injured through the negligence of defendant as alleged, and without negligence on his part, and that defendant was liable if it negligently permitted its engine to run against a certain platform as alleged, such instruction substantially covered a request that it was for the jury to determine whether defendant company used such care in the management and control of the engine in question as a reasonably prudent man would ordinarily have used under such circumstances, and that if they found that such care had not been used, and that plaintiff was injured as alleged, without negligence on his part contributing thereto, he was entitled to a verdict.

2. SAME.—Where, in an action for injuries to plaintiff while about defendant's railroad yard, there was evidence warranting a finding that plaintiff was a trespasser, a request assuming that defendant owed plaintiff a duty of exercising ordinary care was properly refused.

3. SAME—DUTY TO TRESPASSERS.—Where plaintiff was injured while waiting in defendant's railroad yard for a train, after he had terminated his employment, and there was evidence justifying an inference that he was a trespasser, and it did not appear that he was seen by defendant's employees in an exposed position of peril, it was not error for the court to charge that, if the jury found him to be such, defendant owed him no duty or care other than not to willfully or recklessly injure him.

4. SAME.—Where plaintiff remained about defendant's railroad yards for a considerable time after having terminated his employment and received his time certificate entitling him to transportation, and while so remaining was injured, and the court left it to the jury to determine whether plaintiff was a loiterer in the place where he was injured at the time, it was not error for the court to charge that, if plaintiff did not leave defendant's premises within a reasonable time after obtaining his time check and was a mere loiterer about the station, then he was a trespasser, or in refusing to require the jury to determine whether plaintiff was a trespasser, unaided by any instruction as to what would constitute a trespass.

5. SAME—LICENSEES—TRESPASSERS.—Where, after plaintiff quit defendant's service and received his time check entitling him to transportation, he did not leave within a reasonable time, and had made no effort to do so, but remained about defendant's premises without business or lawful purpose, and at the time of his injury he was not intending or expecting to take passage on a train, and was not then doing, and had not theretofore done, anything pursuant to such intention or expectation, a finding that he was a trespasser, and not a licensee, on defendant's premises, was proper.

6. SAME—RAILROADS—CONSTRUCTION—CARE REQUIRED. —Where, at the time plaintiff was injured, defendant railroad company was engaged in constructing its line at the place in question, was not then engaged in the business of a common carrier there, and its yard and premises were not provided or maintained for that purpose, defendant did not owe to an ex-employee, entitled to transportation on its work trains, the care required of a carrier of passengers.

7. SAME—JURORS—QUALIFICATIONS. Where a juror in a personal injury action qualified by stating that he had no prejudice against such cases, nor for or against either of the parties, the fact that on a former trial of a similar action, on his voir dire, he had stated that he was biased and prejudiced in a general way against such cases, but had heard such cases discussed with reference to some

specific instance which had impressed him and those with whom he was talking that the particular case was not a just one, and that he did not condemn all cases, was not a ground for a new trial.

8. SAME—RELATIONSHIP.—That such juror was married to a daughter of a half-sister of one of defendant's secret service employees, which fact, if known, would have induced the exercise of a peremptory challenge, was immaterial.

(Decided July 13, 1905).

APPEAL from District Court, Box Elder County; C. H. Hart, Judge.

Action by Neal Hern against the Southern Pacific Company and others. From a judgment in favor of defendants, plaintiff appeals.

AFFIRMED.

*A. W. Agee* and *W. L. Maginnis* for appellant.

*P. L. Williams* and *Geo. H. Smith* for respondents.

APPELLANT'S POINTS.

During the impaneling of the jury, one John B. Finn, was called and examined on his *voir dire* and stated that he had no feelings of bias or prejudice in cases like this, in which plaintiff sues for personal injuries, and that he knew of no reason why he should not sit as a juror in the case. After verdict was returned appellant and his counsel learned for the first time that only a few days before, this juror, in a similar case, had declared on his *voir dire* that he was "biased and prejudiced in a general way" against such actions, and after a thorough examination on the subject by counsel and the court, he had been excused on a challenge for bias. They also learned that the juror had married a niece of H. H. Cordon, a detective in the employ of the Southern Pacific Company, who was present, assisting counsel for the defense, in

29 Utah—9

the selection of the jury and the trial of the cause. All of these facts were shown by affidavits filed in support of appellant's motion for a new trial, and none of them were denied.

It is the settled rule of law in this State that when it is made to appear that "a juror when asked as to his opinion on *voir dire* had given false answers, and such formation of opinion was unknown to the party at the time, a new trial will be granted." (*State v. Morgan*, 23 Utah 212; *State v. Thompson*, 24 Utah 214; *Tarpey v. Madsen*, 26 Utah 294.)

An instruction submitted to the jury the question of whether he had been a mere loiterer for two days after obtaining these papers. There was no evidence to justify the submission of any such question to the jury, and the jury would not have been justified in finding any such fact. "If an instruction assumes the possibility of a state of facts which the jury have no right to find, there being no evidence, it is error." (*Holt v. Pearson*, 12 Utah 63; *Konold v. R. G. W. Ry. Co.*, 21 Utah 279; *Coats v. U. P. R. R. Co.*, 24 Utah 304; *Bowie v. Spaids*, 26 Neb. 635.)

The whole defense attempted on the trial of this case was the alleged fact that appellant had been discharged or quit work two days before his injury and had wrongfully remained on the premises for an unreasonable length of time and was, therefore, a trespasser, to whom respondents owed no duty except not to wantonly or intentionally injure him. This instruction which virtually said to the jury that they were at liberty to find that appellant had, for two days been a mere loiterer, was calculated to excite in the minds of the jurors a prejudice against appellant and was highly prejudicial to him. The question of whether appellant was a trespasser, a licensee, an employee, or a passenger, was one of fact for the jury and not one of law for the court, even though the jury should find that he had remained there a day or two after getting his time check. He had not been paid off. He had not even been furnished with transportation to Ogden, where it was necessary for him to go to receive his pay. Did he not have a right to remain there until paid off, or at least until furnished transportation to Ogden. And under the cir-

cumstances he was certainly entitled to as much care as an employee. Or since he was at the station with a pass good on the expected train, was he not a passenger? He was certainly, at least, a licensee. A railroad company may permit children or others to play or loiter upon its grounds and premises, and if so, they would not thereby become trespassers, but would be licensees. (*Branson's Admr. v. Labrot*, 81 Ky. 638, 50 Am. Rep. 193; *Emery v. Exposition Co.*, 62 Minn. 460, 57 N. W. 1132; *Clarkin v. Bessemer Co.*, 65 Minn. 483, 67 N. W. 1020.)

It is not the law that if appellant was a trespasser, that he was required to prove that his injuries were willfully, recklessly or maliciously inflicted. (*Morgan v. O. S. L. Ry. Co.*, 27 Utah 92, 100.)

This court in a more recent decision has expressly laid down the doctrine that "a trespasser is not required to allege or prove that the injury complained of was either willfully, wantonly or intentionally inflicted, except when he seeks to recover exemplary damages." (*Klenk v. O. S. L. R. Co.*, 27 Utah 428, 432.)

The principle has been clearly recognized in this court in *Young v. Clark*, 16 Utah 42; *Corbett v. O. S. L. R. Co.*, 25 Utah 449, 453, and *Hyde v. U. P. Ry. Co.*, 7 Utah 356. In the first of these cases it is held that where the presence of people upon a railroad track or bridge is probable, or might reasonably be anticipated, "those in control of passing trains are bound to use reasonable diligence and precaution to prevent injury to those who might be thereon, even though they were trespassers."

For an able discussion of this question see *Bostwick v. Minneapolis & P. Ry. Co.* (N. D.), 51 N. W. 781. In that case it is held that to recover damages for injuries inflicted on a trespassing animal it is not necessary to show that the injury was willfully or wantonly inflicted, and it is stated, page 784, that "possibly there is an inclination to adopt somewhat broader grounds of liability, where the injury is to person instead of property," and certainly such ought to be the rule.

*Brown v. Railroad Company,* 50 Mo. 461 (11 Am. Rep. 420), was an action for damages for personal injuries by being struck by one of defendant's cars at a place other than a public crossing. Held, "that notwithstanding the fact that plaintiff was not rightfully on the track, at the place of the injury, yet, if the injury might have been avoided by the use of ordinary care and caution by the defendant, the latter was liable therefor." Held further, that "the degree of care required of persons having charge of locomotives and cars, upon tracks in towns, varies according to the circumstances of the case, and must be proportioned to the danger to be apprehended of inflicting injuries upon others." More correctly speaking, ordinary care at least, is always required, but what is ordinary care depends on the circumstances of the case, and is a question of fact for the jury. If the circumstances are such that a reasonably prudent person might reasonably anticipate injury to another, by the doing or omitting to do some act, then the doing or omitting to do such act, shows a want of ordinary care and constitutes actionable negligence, without regard to whether the injured party is or is not a trespasser. (*Meeks v. Southern Pacific Co.,* 56 Cal. 513, 38 Am. Rep. 67; *Kline v. C. P. R. R. Co.,* 37 Cal. 400; *Needham v. R. R. Co.,* 37 Cal. 409; *Isbell v. Railroad Co.,* 27 Conn. 304; *Cottrell v. Southern Ry. Co.* [Miss.], 32 So. 1, 2 R. R. C. 641; *Way v. Chicago R. I. & P. Ry. Co.,* 73 Ia. 446, 35 N. W. 525.)

There is not a syllable of testimony in this record to show that appellant, even if not rightfully on the premises, was other than a mere technical trespasser, hence under repeated decisions of this court this instruction did not correctly state the law applicable to this case. (*Everett v. O. S. L. R. Co.,* 9 Utah 340; *Love v. Salt Lake City,* 13 Utah 91-97; *Clarkin v. Bessemer Co.* [Minn.], 67 N. W. 1020; *Sanders v. Reister* [Dak.], 46 N. W. 680, 684.)

It is error to give an instruction not based on the evidence. (*Konold v. R. G. W. Ry. Co.,* 21 Utah 379; *Coats v. U. P. R. Co.,* 24 Utah 304.)

And where an erroneous instruction is given the error will

not be cured by another correctly stating the law. (*Konold v. R. G. W. Ry. Co.*, 21 Utah 379.)

. In conclusion we submit: First. That under the repeated decisions of this court and the settled rule in this State, appellant is entitled to a reversal of the judgment on the grounds of surprise, because of the false statements of the juror Finn made on his *voir dire.* Second. That the rule is firmly established in this State and is not now open to question, that even a trespasser is not required to allege or prove that his injuries complained of were willfully, wantonly or intentionally inflicted, where he seeks to recover compensatory damages only. (*Klenk v. O. S. L. R. Co.*, 27 Utah 428; *Everett v. O. S. L. Co.*, 9 Utah 340; *Lowe v. Salt Lake City*, 13 Utah 97; *Corbett v. O. S. L. R. Co.*, 25 Utah 453; *Young v. Clark*, 16 Utah 42.) And this doctrine is supported by reason and the great weight of authorities. (Shearman & Redfield on Negligence, 97, 98; 21 Ency. of Law [2 Ed.], 459, 460, 470, 471, and authorities *supra.*)

RESPONDENT'S POINTS.

Considering the record in the case, we submit and insist that neither of the cases cited from this court from 23, 24 and 26 Utah justify the contention that is made here that would warrant a reversal of this case upon the assumption that Finn was a biased and prejudiced juror. We think the true rule in this class of cases is well illustrated by *Southern Railroad Co. v. Oliver*, from the Court of Appeals of Virginia, reported in 35 American & English Railroad Cases, new series, page 695. This particular question is dealt with in the opinion of the court at page 703.

We submit that the evidence shows conclusively that the plaintiff was a mere loiterer upon defendant's premises. So that we say there was justification in the court charging that if he was loitering about the place, and which he was beyond all question, and eating free meals at the company's boarding cars, he was not entitled to recover for injury unless there was evidence that it was wantonly or willfully inflicted. We

submit that the criticism of the instructions of the court are no more than verbal criticisms, that they covered the case fully, and upon the whole are correct and applicable to the case. That there is no just ground for claim of misdirection or that the jury was misled, and the testimony shows that the verdict was right. (Rev. Stat. secs. 3008 and 3285, 11 Am. and Eng. Enc. of Law, 266.)

STRAUP, J.

1. This is an action for personal injury. The alleged acts of negligence are that the respondents constructed and permitted a certain platform, upon which large quantities of coal were placed, to be defective and overloaded, whereby it was made liable to fall, and in leaving an engine with steam to stand on a track leading to said platform unattended, and without being blocked, whereby the engine was self-propelled against the platform, casting it and the coal against and upon appellant, throwing him into and upon an outdoor and nearby fire, thereby wounding and burning him. A trial before the court and jury resulted in a verdict against plaintiff, and he appeals. The court granted a motion for a nonsuit as to respondent Ogden & Lucin Railroad Company, charged the jury they could render no verdict against defendant Beckham, because he was not served, and submitted the issues to the jury as to the respondent Southern Pacific Company; and when we herein speak of respondent the last-named company is meant.

From the evidence it is made to appear that the respondent was engaged at railroad construction work at a place called "Hog-up," in Box Elder county, this State, and where a construction yard was maintained by it, composed of several tracks and spurs. In this yard a coal bunk or platform, variously estimated at from one hundred to one hundred and fifty feet long, fourteen to sixteen feet wide, and four to six feet in height, was maintained by respondent, upon which was kept a large quantity of coal. There were from eight hundred to a thousand men working at and in the vicinity of Hog-up. There were no houses at the place, and the men

dwelt and boarded in cars provided for that purpose. Appellant had been in the employ of respondent as a cook on one of its cars, and on what was called the "short-order train," principally for trainmen. His employment commenced about the middle of October, and lasted until the evening of November 6, 1903, at which time he quit. A water train and work and gravel trains were run and operated to and from Hog-up and about the yard, where also were maintained a sort of roundhouse and repair shops. Appellant says he was unable to find the timekeeper on the 7th until about 1 o'clock p. m., to obtain a statement of his time for his six days' work, and was unable to get to the office car for his time check until about four o'clock p. m. of the same day. This time check had to be presented at Ogden for payment; but it was good as a pass, entitling appellant to be conveyed on respondent's train. After supper on the said 7th appellant inquired about the trains, and when one would leave for Lakeside, the place where he intended going, but was unable to obtain the information, except, as he was informed, that the trains usually started from the gravel pit, where they were loaded. He did not go down to the gravel pit, because it was coming dark, and because of a rough road, and he concluded to wait until the next day, which was Sunday, the 8th day of November. After breakfast on Sunday, he says he "knocked around the forenoon," endeavoring to find out about when a train would leave. He was again unable to obtain any information until about eleven o'clock a. m., when he was told that a water train was liable to come along at any time. He then got his dinner, ate it hurriedly, and was on his way from the boarding car to the water tank, where he says he had intended taking the train if one came along; and, as he was passing one end of the said platform, an engine, which had been standing on a track leading to it, and there left unattended and unblocked, was self-propelled against the platform, whereby it and the coal was cast against and upon him, throwing him into and upon the outdoor fire, thereby wounding, burning, and permanently injuring him. A number of workmen were standing and sitting around and about the fire, one of whom was

also injured at the same time. There was a train dispatcher at Hog-up; but appellant did not go to his office to find out the time that trains left, or when one could be had. The engine, when started, was about eighteen feet from the platform, and, when it struck it, knocked it down. From the time appellant quit work, and until the accident, he obtained his meals at the boarding car free of expense, and appellant said he was there made welcome. A great many people during the day passed the end of the said platform, especially at mealtimes, and did so on the day of the accident. Evidence was also given on behalf of appellant showing that an engine, with steam, left standing and unblocked, is apt to start up.

On the part of respondent it was shown: That the platform was supported by ties placed on end, and would hold all the coal that could be piled on it. As a general practice the engines took water at the tank during the noon hour, without bringing the train with them. Persons going to Lakeside usually took the train at the south end of the yards, where usually there was a trainmaster, and usually it could be found between there and the tank, and there was good cinder path leading from the boarding house to that place. That the time check was issued and delivered to the plaintiff at 3 o'clock p. m. of November 7th. That office hours were also kept in the evening between 9 and 10 o'clock, and that plaintiff could have obtained his statement of time and time check on the evening of November 6th, the day on which he quit work, had he desired to do so, and that he could have obtained them any time during the 7th. It was also shown by respondent that from six o'clock p. m. to midnight of November 6th four trains left Hog-up to Lakeside, from twelve o'clock midnight of November 6th to twelve o'clock midnight of November 7th eighteen trains left Hog-up to Lakeside, and on the morning of the 8th up to twelve o'clock noon six trains left Hog-up to Lakeside; that all these trains carried cabooses; and that plaintiff could have ridden and would have been carried on any one of these trains, had he desired to go from Hog-up to Lakeside. A number of witnesses on the part of respondent testified, also, that at the time of his injury appellant, with

others was seated around the fire, with his face towards it and his back towards the platform, and that he had been sitting there for more than twenty minutes. It was also shown that there was a pit about eight or nine feet from the platform, over which this engine was placed about nine o'clock a. m. on the day of the accident to be washed out, and it was there from that time until the injury, which was about noon; that, when the engine was first placed there, it was blocked, and the steam all let out, in order to wash it out; and afterwards the steam was raised to remove it, so that another engine might be placed over the pit.

2. From this evidence two contentions were made at the trial, and are here made: One, on the part of appellant, that he was about the premises of the respondent with rights of that of an intending passenger, or at least otherwise rightfully about the premises, either with respondent's implied consent or by its license, and that it owed him the duty of ordinary care in the operating and handling of its engine and in the maintenance of its platform, and that this duty was not performed. On the other hand, it is and was contended on the part of the respondent that appellant was about the premises without right or lawful purpose, a mere loiterer, and therefore a trespasser, and that it owed him no duty of care other than not to wantonly or willfully injure him. In view of these contentions after stating the issues to the jury and defining negligence, the court, among other matters, charged the jury as follows:

"(5) The jury are instructed that the plaintiff was entitled to a reasonable time, after quitting his work for the defendant Southern Pacific Company, in which to obtain his pay for his services, or to obtain his time check and identification paper necessary to enable him to draw his pay, and which would entitle him to ride on defendant's train in leaving Hog-up, the place where employed, and in which to leave said place. What would be such reasonable time is a question to be determined by the jury from all the facts and circumstances proven on the trial. He was not required to expose himself to unnecessary and unreasonable danger in at-

tempting to find or to get onto a train for the purpose of leaving Hog-up; nor was he required to take a train which would land him at the place where he was intending to go at a time and under such circumstances as would expose him to unnecessary and unreasonable hazards or dangers.

"(6) In determining whether or not plaintiff remained at Hog-up more than a reasonable length of time after he quit work for the defendant, you may take into consideration whether or not any objection was made by the employees of the railroad company in charge of the grounds and premises of the defendant company at Hog-up to his remaining there, and whether plaintiff, in remaining there the length of time he did, acted in good faith, and without any reason to suppose any objection would be made to his so remaining.

"(7) The jury are instructed that if you find from the evidence that the plaintiff quit work or resigned, and had been paid off and given the necessary time check and identification by the Southern Pacific Company a day or two before the accident, and had failed to leave within a reasonable time, and was a mere loiterer about the station of said company, then and in that case said plaintiff was a trespasser on the grounds of said defendant, and said defendant owed him no duty or care other than not to willfully, recklessly, or maliciously injure him; and, unless you find by a preponderance of the evidence that they did so injure him, your verdict should be for the defendant, the Southern Pacific Company.

"(8) I further instruct you that if you find that said plaintiff had ceased to work, or resigned, and had been given his time check and identification a day or two before the accident, and instead of taking the train or some passing train to Lakeside, or wherever he may have desired to go, elected to hang around or loiter around the station at Hog-up, and not with the immediate purpose of taking passage on any train at or passing Hog-up, then said plaintiff was not at the time a passenger on said line of road; and unless you find that said defendant, the Southern Pacific Company, willfully, wantonly, or recklessly injured plaintiff, your verdict must be for said defendant.

"(9) If you believe from the evidence that at the time of plaintiff's injury he was committing a trespass by remaining on the grounds or premises of the defendant more than a reasonable time after quitting work, still, if you further find from the evidence that the plaintiff did not intend to commit any trespass, or that the trespass was purely technical and only such as he might reasonably expect the defendant would permit without any objection, and that in fact it did not cause any appreciable annoyance or injury to the defendant, then his recovery will not be prevented by reason of such trespass, provided you find, by a preponderance of all the evidence, that his injuries were caused by the negligence of the defendant as alleged, and without negligence on his part proximately contributing thereto."

"(13) If the jury believe from the evidence in the case that the plaintiff had no legal right to be where he was on the premises of the Southern Pacific Company at the time of the alleged injury, still no one would be justified in willfully or recklessly injuring him; and I therefore charge you that if you believe from the evidence that the person or persons having charge or control of the engine in question, while so in the employ of the defendant company, acted in such a careless and reckless manner as would indicate a disregard of the consequences of his or their acts, and by reason of such negligence the plaintiff was injured, as alleged in his complaint, and without any negligence of the plaintiff proximately contributing thereto, then the plaintiff would be entitled to recover in this action for the injuries sustained."

3. Appellant requested the court to charge in substance that it was for the jury to determine, from all the facts and circumstances proven, whether or not the defendant, the Southern Pacific Company, used such care in the management and control of the engine as a reasonably prudent man would ordinarily have used under such circumstances, and that if they found from all the facts and circumstances appearing from the evidence that such care had not been used, and that the plaintiff was injured as alleged in his complaint, and without negligence on his part contributing thereto, he

was entitled to a verdict. The refusal of the court to give this request, and charging the jury as was done in paragraphs 7 and 8, are presented as the principal alleged errors.

The substance of the refused request, we think, was given when charging the jury on appellant's theory. The court stated to them what were the alleged acts of negligence; in paragraph 4 defined negligence in effect as stated in the request; in paragraph 9 instructed the jury that the plaintiff was entitled to recover, although a technical trespasser, if injured through the negligence of the defendant as alleged, and without negligence on his part; and in paragraph 12 that respondent was liable, if it negligently permitted its engine to run against the platform. Furthermore, in view of the contentions, the one that appellant was rightfully, and the other that he was wrongfully, about the premises, the request in form as presented was properly refused. The request assumes a duty of care toward appellant in respondent's management and control of the engine, regardless as to whether he was a trespasser, and regardless as to any known presence in a position of danger. The request assumes a like duty to use care in the management and control of the engine, whether appellant was rightfully or wrongfully about the premises. At least, no distinction in this regard is made, only so far as the jury may see fit itself to make it in determining what a reasonably prudent man under the circumstances would have done. Had this request been coupled with the statement that if the jury found appellant was rightfully about the premises, or, had the question of his rightfulness or wrongfulness about the premises not been an issuable or a disputed fact, then the request might not have been objectionable. Before respondent was chargeable with care in the management and control of its engine, it must be made to appear that it owed appellant a duty in this regard; and the jury should have been so instructed. Negligence is predicated on a legal duty to use care, and on a breach of that duty resulting in injury. Where there is no legal duty to exercise care, there can be no actionable negligence. There is evidence in the record from which a finding is authorized that

appellant was a trespasser. A request which leaves it to the jury to apply the same standard of duty and use of care toward such a person as to one rightfully about the premises is wrong. It certainly cannot be successfully contended that a railroad company owes the same duty to use care toward a trespasser upon its premises or track as it does toward one who is there with its consent or permission, or who is otherwise there rightfully. In the latter instance the company owes a duty to use reasonable care, the amount of which is dependent upon the exigencies of the case, in the management and control of its engine and cars; but, in the former, the duty not to wantonly or willfully injure him. To the one it owes an active and affirmative duty; to the other, a passive and negative one.

In this connection it is well to observe the complaint that is made of paragraph 7, above quoted. It is claimed that the court erred in stating that, if appellant was a trespasser, respondent owed him no duty or care other than not to willfully or recklessly injure him. It is urged that, though appellant was a trespasser, respondent nevertheless owed him a duty to use care in the management and control of its engine, the amount and degree of which was to be measured by the jury under all the circumstances of the case by what a reasonably prudent man, under like conditions, should have done. This presents the same question to be considered under the refused requests. That a trespasser on the premises or track of a railway company is not entitled to recover damages for an injury, in the absence of willful, wanton, or reckless conduct on the part of the company or its agents, is well settled, subject, however, to the rule that when the trespasser is seen in a position of peril, or, as some of the authorities say, when it is made reasonably apparent that he is insensible to the danger or in a helpless condition, or lacks the capacity or discretion to understand or appreciate the danger, the company will not be held blameless if the injury is inflicted negligently; for in such case it owes a duty to use reasonable care to avoid injury. To these latter propositions are addressed appellant's cases on this branch of the case. But the matter

is not pertinent here, for the appellant does not come within the rule where a trespasser is in an exposed position of peril within the meaning and principle illustrated by the cases. There is no evidence in the record showing a situation whereby such an affirmative duty on the part of the respondent is created. This is not a case where the alleged act of negligence is done at a time when the presence of a trespasser exposed in a position of peril is known. To say that respondent was required to block the engine, or otherwise use some similar care with respect to it, in anticipation of a trespasser's straying upon its premises and making an unauthorized use of them, would be imposing upon it an unreasonable burden, and would be announcing a rule that one is in duty bound to facilitate the trespass, and to render reasonably safe the position of one who might commit it. To also say that many other persons were around and about the premises, so far as made here to appear all employees of the respondent and there rightfully, therefore a duty of care in the handling and blocking of the engine arose, cannot avail appellant. It is not what duty the respondent owed them, but what duty it owed him, on the theory that he was a trespasser. Before he has legal cause of complaint, he must show a duty owing to him, and a breach of that duty, resulting in his injury. A case may well arise where an act injures two persons, one of whom is rightfully, and the other wrongfully, about the premises, and where the actor is properly made liable for the one injury, but not for the other, on the principle that as to the one person he owes a duty to use reasonable care, while as to the other he owed no such duty. So that when the court told the jury that, if they found appellant was a trespasser, respondent owed him no duty or care other than not to wantonly or recklessly injure him, he stated on that proposition all that was here necessary to state.

Complaint is also made of paragraph 7, wherein the court charged that if the jury found appellant did not leave within a reasonable time after obtaining his time check, and was a mere loiterer about the station, then he was a trespasser; and of like expressions in paragraph 8. It is here urged

that whether appellant was a trespasser was a question of fact would should have been left to the jury, unaided by the court as to what would be or constitute a trespass. While the expressions "loiter" and "hang around" were not apt expressions, in that it had a tendency to characterize the acts and conduct of appellant by the court, which more properly was within the province of the jury, yet we think appellant was neither prejudiced thereby, nor that the jury was thereby misled in accepting or applying these expressions in a sense different from the one that appelant was about the station without the consent or permission or license of respondent. The term "loiter" of necessity implies appellant's presence about the station without consent, permission, or license. If anything, it is even broader than these terms; for one may be about the premises without consent, permission, or license, and yet not be loitering and therefore be a trespasser, and not a loiterer. To aid the jury in properly determining the fact it was proper for the court to instruct them what would constitute a trespass, and to charge that one about premises of another without consent, permission, or license was a trespasser. When he told them a mere loiterer was a trespasser, by necessary implication he told them all these things. It will be presumed the jury accepted the term "loiterer" in its ordinary and popular sense; and, when such meaning is given it, we cannot see how the jury could have applied it in any sense consistent with appellant's presence rightfully about the premises. The fact as to whether appellant was a loiterer was not assumed by the court, but was left with the jury for their finding as will be seen by the charge. We think, therefore, no error was committed in refusing appellant's request, or in charging the jury in manner complained of.

4. It is claimed that the evidence without dispute shows appellant was about the premises with rights of an intending passenger, or was otherwise there with respondent's consent or permission, and hence the court committed error in charging at all on the question of whether he was a trespasser. We have already indicated, and here again say, without setting forth in detail the portions of the testimony, that there

was sufficient evidence to authorize and warrant the jury in finding the fact that appellant was trespassing. There is quite sufficient evidence from which, if believed by them, the jury could well find that appellant, after he quit the services of the respondent, did not leave within a reasonable time, had made no effort to do so, that he was about its premises without business or lawful purpose, and that at the time of the accident he was not intending or expecting to take passage, and was not then doing, nor had he theretofore done, anything in pursuance of such intention or expectation. Furthermore, the court, in paragraph 9, charged the jury, though appellant was committing a trespass, still, if he did not intend to commit it, or its commission was purely technical and done under circumstances where he might reasonably suppose there would be no objection on the part of respondent, such trespass would not prevent his right of recovery, providing his injuries were caused by the negligence of respondent, without negligence on his part proximately contributing thereto. The court having theretofore fully stated to the jury that the alleged acts of respondent's negligence consisted in its failure to use ordinary care in the handling and management of its engine and maintenance of its platform, and that it negligently and carelessly left the engine standing unblocked and without any one in charge of it, and carelessly and negligently permitted the platform to be weak and overloaded, and having theretofore defined negligence to be the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or the doing of what such a person under the existing circumstances would not have done, therefore the verdict of the jury is a finding that respondent was not guilty of negligence, or, if so, appellant's negligence contributed. Viewing the charge as a whole, we think the law applicable to the two contending theories was in substance correctly stated. On appellant's theory of an intending passenger, many cases have been cited illustrating the duty and use of care of common carriers toward passengers, those intending to take passage, and who, in pursuance thereof, are in and about station houses and depot premises.

But it must be borne in mind here that respondent at Hog-up was not there engaged in the business of a common carrier, nor were its yard and premises there provided or maintained for such purpose; and therefore what courts have said with respect to the duty and use of care on the part of carriers toward passengers, or those intending to take passage, and who, in pursuance thereof, are about their station houses and depot premises, does not here have equal application.

5. A juror who sat in the case, on his *voir dire,* in response to questions stated that he had no feelings of prejudice or bias against cases brought for personal injuries alleged to have been received from the negligence of a person or corporation, that he had no bias or prejudice in favor or against either of the parties; that he could fairly and impartially decide the case, and that he knew of no reason why he could not sit as a juror in the trial of the case. In support of his motion for a new trial, appellant presented affidavits on his behalf, showing that in a similar case, tried prior to this one, this same juror, on his *voir dire,* stated that he was biased and prejudiced in a general way against cases of this kind, but in that connection also stated that he heard this class of cases discussed in connection with some specific instance which had impressed him and those with whom he was talking that the particular case was not a just one; that he did not condemn all cases; that he recognized that there were just cases, many of them, perhaps the majority; that he had been in the railroad business nearly all his life; that his attention had not been particularly called to such cases; that, if he had such a case against a railroad company, he would be willing to have eight men of the same experience the same knowledge, the same impression, and the same state of mind as he had, to try his case. It was also shown by the affidavit that the said juror was married to a daughter of a half-sister of one Condon, who was an employee of the secret service of respondent, and who at this trial advised with its counsel in the making up of the jury, and that the fact of such marriage and of his said statements at said former trial concerning his

prejudice and bias were not known to appellant or his counsel at the time of this trial.

We think the court did not err in refusing to grant a new trial because of these matters. It is not sufficiently made to appear that such a state of mind existed on the part of the juror, with reference to the case or to either party, which prevented him from acting impartially and without prejudice to the rights of the appellant, or that he had made false answers with respect to matters about which he was examined. While a portion of the affidavit asserts that the juror in the former trial stated that he had a general prejudice or bias against cases of this kind, when such statement is read and considered in connection with the other statements then also made as above set forth, the conclusion that it shows a state of mind of general prejudice and bias is not warranted from the whole statement. In giving a proper construction of what the juror in fact stated on the former trial concerning his state of mind, such construction should not be made alone from one sentence or only a portion of his statements, but it should be made from all that he said on the subject-matter. When so considered, we think it does not warrant the conclusion that the statement of the juror was one showing the existence of a state of mind of general prejudice and bias; and, when each examination of the juror is so considered, there is no substantial or material conflict between the statements of his two examinations, at least not to the extent where it can be said one or the other is false. Concerning his marriage to a daughter of a half-sister of a mere employee of respondent, if important, it was not at all concealed by the juror. There was nothing asked him by which his mind was directed to such matter, or to which it could have been any kind of response. Counsel say, if they had known of these matters, they would have exercised a peremptory challenge on the juror. It is common to every practitioner, after trial, oftentimes to learn of some thing or fact concerning a juror, for which, had it been known in time, a peremptory challenge would have been exercised; but to grant a new trial because of such matters, where the juror has not, by false answers or

otherwise, misled the litigant to his prejudice, is going quite beyond the decisions.

Other matters of error, but of less importance than those considered, are also alleged. We do not think them of sufficient importance to require expressions from us concerning them.

The law applicable to the case having been in substance correctly stated to the jury, and they, upon conflicting evidence, having found the facts against appellant, and no error sufficiently being made to appear, the judgment of the court below must be affirmed; costs to be taxed against appellant.

BARTCH, C. J., and McCARTY, J., concur.