[No. 2267]

FRED CROSMAN, RESPONDENT, v. SOUTHERN PACIFIC COMPANY (A CORPORATION), APPELLANT.

[173 Pac. 223]

1. TRIAL—SPECIAL FINDINGS—INCONSISTENCY WITH VERDICT.
    The inconsistency between special findings and the general verdict which, under Stats. 1915, c. 92, makes the former controlling, must be irreconcilable; one that no reasonable hypothesis or inference under the pleadings can remove.

2. RAILROADS—DUTY TO PERSONS ON TRACKS—INSTRUCTIONS.
    A general instruction, leaving it to the jury to apply the same standard of duty in the management of trains towards one on the track, whether rightfully or wrongfully there, is erroneous.

3. TRIAL—INSTRUCTIONS—THEORIES OF CASE.
    The parties having different theories of the case, and there being evidence tending to support each, instructions should be given on both.

4. RAILROADS—INJURY TO PERSON ON TRACK—LIABILITY.
    In the absence of wantonness, negligence of railroad company in backing its switch engine without a rear light, and in not keeping a lookout, will not make it liable for injury to a person running his velocipede car after dark, contrary to instructions, and using the track which he knew was regularly used for trains running in the opposite direction.

5. NEGLIGENCE—WANTONNESS—FINDINGS.
    Special finding that defendant's conduct was "careless disregard" for plaintiff's safety rebuts assumption that its act was "wilful," "wanton," or "aggravated misconduct" or "reckless disregard" of his safety.

APPEAL from Second Judicial District Court, Washoe County; *Mark R. Averill*, Judge.

Action by Fred Crosman against the Southern Pacific Company. Judgment for plaintiff, and defendant appeals. **Reversed, and remanded for new trial.**

STATEMENT OF FACTS

The Southern Pacific Company, a railway corporation, has appealed to this court from a judgment in the sum of $25,000, the amount assessed against it by the verdict of a jury as compensation for personal injuries alleged to have been sustained by plaintiff in consequence of the alleged negligence of the defendant company. At the proper stage in the trial the defendant

moved for a nonsuit and a directed verdict. Both motions were denied. Upon the request of counsel for the parties the court submitted to the jury 37 special interrogatories, 35 of which were answered, returned, and filed with the verdict. The defendant moved for judgment upon the special findings, notwithstanding the general verdict in plaintiff's favor, and also moved for a new trial, which motions were denied.

The uncontradicted facts are that, long prior to the date of the injuries complained of, the Southern Pacific Company operated and maintained between its stations, Truckee, Cal., and Sparks, Nevada, a double main-line track; that prior to and at the time of the accident and injuries to the plaintiff, there was in vogue between these points what is called the left-hand traffic movement; that is to say, all trains operated between these points moved upon the left-hand track. The Postal Telegraph Cable Company, long prior to the injuries, owned and operated telegraph lines extended along the right of way of the Southern Pacific Company between its stations referred to in this statement. The railroad company, at the request of the telegraph company, granted permission to allow its employees engaged in repair and maintenance service to operate upon its tracks velocipede cars at their discretion, in the course of their employment, between Sparks and Wells, Nevada. This arrangement is evidenced by a written agreement, dated the 31st day of January, 1911, which, among other things, provided that said employees might use such cars at their sole risk as gratuitous licensees, and the railroad company should owe them no duty, nor be liable for injuries sustained by them, whether arising from negligence or otherwise, and the postal company should indemnify and hold harmless the railroad company on account of any injuries to any employee while so engaged in operating such cars between Sparks and Wells. The injuries complained of were received at a point on defendant's road between Sparks and Reno. The city of Reno is an intermediate station between

Truckee and Sparks, situate about three miles west of Sparks.  Sparks is a division point that marks the western limit of the Salt Lake division and the eastern limit of the Sacramento division.  Wells is a station situate several hundred miles east of Sparks.  The Sparks and Reno yards overlap, but for a distance of about three-quarters of a mile between these points there are but two main-line tracks.  Long prior to the injuries complained of the defendant employed a switch engine, equipped with headlights on front and rear, in its Reno yards.  The engine was housed at Sparks, and customarily left the latter place in the early hours of the morning to do its work in the Reno yards.  When its work was completed it necessarily moved backward to Sparks, pulling such cars as were required to be transferred from Reno to the Sparks yards.

Crosman, the plaintiff, was employed by the telegraph company, on or about July 1, 1911, as a lineman, whose duty it was to assist in the maintenance of his employer's lines as far east as Lovelock, Nevada, and as far west as Floriston, Cal.  At the time of his employment the telegraph company operated a velocipede car upon the tracks of the defendant company out of Reno.  Crosman resided in Reno, and from the date of his employment operated a velocipede car out of Reno up to the date of his injuries without protest or objection on the part of the defendant's officers, agents, or employees, except as here now stated: An accident occurred on the line of defendant company some time in September, 1911, which was attributed to the use of the velocipede cars by the employees of the telegraph company upon defendant's tracks after dark without a light.  This led the company to revoke or modify its permission theretofore given the telegraph company, to the extent of prohibiting the use of its tracks on the Salt Lake division after dark.  Pursuant to an order of the defendant company, the telegraph company, by telegram and letter dated September 25, 1911, instructed Crosman not to use the motor car upon defendant's

tracks after dark under any circumstances. In this letter he was requested to advise if the instructions contained were clearly and definitely understood. Crosman wrote the company on October 4, 1911, as follows:

"In acknowledgment of your letter of September 25, in regard to running of cars after dark, I wish to state I thoroughly understand the meaning of that instruction."

In so far as it appears from the record, the plaintiff at no time attempted to operate a velocipede car upon defendant's track after dark up to the date of his injuries. On February 14, 1912, the telegraph company inclosed to Crosman in a letter a copy of its agreement herein referred to with the defendant company: In the letter Crossman was requested to carry the permit with him while using the car to show his authority so to do when challenged. On the 18th day of February, 1914, Crosman, together with a coemployee, while proceeding in a westerly direction upon a velocipede car, at a speed of about ten or fifteen miles per hour, between Sparks and Reno, after dark, between the hours of 6:30 and 7 p. m., at a point about 400 yards west of the Sparks ticket office on the Salt Lake division, was run into by a switch engine moving backward in an easterly direction on the left-hand track of the main-line track, which was returning from Reno to Sparks drawing a train of twenty cars to be distributed in the Sparks yards. The velocipede car weighed approximately 400 pounds, and was propelled by a two-cylinder gas engine. Crosman operated the car, and his companion sat immediately in front of him on a narrow running-board. The evidence tends to show that at about the time the engine crew had completed their labors and were ready to return to Sparks, it was discovered that the rear headlight on the tender of the engine was out of commission. A lantern was placed on the bumper beam which extended across the length of the tank about four feet above the track. The reflection of this lighted lantern would not enable the engineer or fireman to see any

character of obstruction upon the track, but such light could be seen for approximately a distance of one-half mile on a straight track. The engine was drifting along without steam at a speed of ten or twelve miles per hour at the place of the collision. The regulation signals were given from time to time en route. The engineer testified, in substance and to the effect, that he had no reason to anticipate that there would be a gasoline car on the left-hand track on going to Sparks that night; that he had no knowledge of the presence of the car upon the left-hand track until about the time of the collision; that he thought he had a clear track in front of him when he started his engine upon the left-hand track for Sparks.

The plaintiff and his companion testified, in substance and to the effect, that at the time of the collision there was no light on the engine; that they had no knowledge of its approach, and that just before the impact the plaintiff's companion yelled "There is something on the track just ahead of us," and he jumped and escaped injury. The plaintiff stated:

"I was not thinking just exactly of the switch engine; I was looking for any train, but was expecting them to come with a headlight or a light, and there was no light whatever."

The night was dark, cold, and the wind was blowing from the west. The plaintiff's companion sat with his hat drawn down and his coat collar turned up to protect him from the elements. The plaintiff endeavored to extricate himself from his position in operating the car, but could not do so in time to clear himself from danger. His car was caught beneath the running-board extending along the side of the engine. It appears that when in operation this velocipede car made more noise than a motorcycle or automobile with its muffler wide open, and the noise of the approaching engine could not be heard. Crosman, as the result of the collision, was desperately injured.

The averments of the complaint are to the effect that Crosman operated the car between Sparks and Wells in

virtue of the agreement between the said companies, and operated the car between Reno and Sparks with the knowledge, consent, and permission of the railroad company.

The defendant, by its answer, set up, among other defenses, that Crosman, prior to his injuries, was forbidden the use of defendant's track after dark, and was where he had no right to be at the time of receiving his alleged injuries.  In reply the plaintiff alleges, in substance, that he was at the time of his injuries in the line of his duty, and engaged in making repairs to certain of the wires of the telegraph company at or near Gilpin (east of Sparks), and had completed his work and started on his return journey in time to reach Reno before dark, but while within the station and yard limits of Sparks, and near the Sparks station, it became necessary to make certain repairs to the velocipede car, so that the time required to make such repairs prevented plaintiff from reaching the point where he was injured before dark.

Such of the special findings deemed pertinent to the conclusion reached are referred to in the opinion.

*Brown & Belford,* for Appellant:

Uncontradicted testimony shows that at the time of the injury to respondent he was using his gasoline speeder on the tracks of the appellant in direct and knowing violation of his positive instructions.  He was not only a naked trespasser, but he was a trespasser who was guilty of negligence himself, which in the very nature of things proximately contributed to his injury and without which the injury would not and could not have occurred. "Every unauthorized entry upon land of another is a trespass."  38 Cyc. 995.  A person who goes or remains upon land of another without authority for so doing is a trespasser; and where a person, having authority for the original entry, exceeds or abuses such authority, he becomes a trespasser ab initio.  28 Cyc. 444–445, 38 Cyc. 1000.

A carrier owes no duty to a trespasser, except to

refrain from wantonly or wilfully injuring him after his presence is discovered. The only relaxation of this rule is as to places where the presence on the track is reasonably to be anticipated, such as street crossings in populous communities. 29 Cyc. 442; 3 Thompson on Negligence, 722, 723. "In determining respondent's negligence we must determine the duty it owed to appellant, since negligence occurs only where there is a breach of legal duty. That duty in cases of licensees and volunteers is not to wilfully or wantonly injure them." Shafer v. Tacoma Eastern Ry. Co., 157 Pac. 485; Egan v. Montana Central Ry. Co., 63 Pac. 831; Martin v. Northern Pacific Co., 149 Pac. 89; Kroeger v. Grays Harbor Construction Co., 145 Pac. 63; Toomey v. Southern Pacific Co., 24 Pac. 1074; A. T. & S. F. Co. v. Todd, 38 Pac. 804; Hayden v. A. T. & S. F. Co., 124 Pac. 165; Malott v. Union Pacific R. Co., 160 Pac. 978; Kansas Southern Co. v. Langley, 160 Pac. 451; M. K. & T. Co. v. Robnett, 157 Pac. 72.

There is no difference in the duty owed by a railroad company to trespassers and bare licensees. Egan v. Montana Central Ry. Co., 63 Pac. 831; 33 Cyc. 767; 2 Elliott on Railroads, sec. 1250; 2 Thompson on Negligence, sec. 1705; Bull v. Cleveland Co., 52 N. E. 1013; Ward v. Southern Pacific Co., 136 Pac. 166.

The agreement between the Southern Pacific Company and the Postal Telegraph Cable Company was valid, and constituted a complete bar to the action. P. C. C. & St. L. Ry. Co. v. Mahony, 46 N. E. 517; Robinson v. St. Johnsbury & L. C. R. Co., 66 Atl. 814; Boering v. Chesapeake B. Ry. Co., 193 U. S. 442; Muldoon v. Seattle Ry. Co., 38 Pac. 995; Quimby v. Boston & M. R. Co., 23 N. E. 205.

The testimony established, and the jury so found, that the plaintiff at the time of the accident was a trespasser. He could not recover unless the defendant was guilty of some wilful or wanton act toward him after discovering his peril. 1 Street on Foundations of Legal Liability, p. 155. The jury found that plaintiff was a trespasser, and it also found that the defendant

was not guilty of wilfulness, wantonness, or reckless-
ness.  In order to constitute wilfulness or wantonness
or reckless indifference to probable consequences, the
act done or omitted must be done or omitted with a
knowledge or a present consciousness that injury will
probably result; and this consciousness is not to be
implied from mere knowledge of the elements of the
dangerous situation the person may be in and negligent
and inadvertent acts in respect to this fact.  Duncan v.
St. Louis Ry. Co., 44 So. 418; Brooks v. Pittsburg Co.,
62 N. E. 694; Schug v. C., M. & St. P. Ry. Co., 78
N. W. 1090.

Where a wanton or wilful act is relied upon to create
a liability, it must be specifically charged.  "An allega-
tion of negligence raises no issue as to wilful infliction
of the injuries complained of."  29 Cyc. 585; Bailey v.
Railway Co., 62 S. E. 912; Memphis R. R. Co. v. Martin,
23 So. 231; L. & N. R. R. Co. v. Anchora, 22 So. 279;
Chicago R. R. Co. v. Hedges, 7 N. E. 801.  There is no
virtue in a pleading which charges an act as "gross"
negligence, unless facts alleged show it to be such, and
also show it to be wanton or wilful.  If such facts are
not pleaded, the term is a mere expletive and is sur-
plusage.  Meadow v. Richmond Ry. Co., 11 S. E. 316;
D. & R. G. Co. v. Buffehr, 69 Pac. 582; Kelly v. Malott,
135 Fed. 74; Gregory v. Cleveland Ry. Co., 14 N. E.
228; Railway Co. v. Schmidt, 5 N. E. 684; Mescall v.
Tully, 91 Ind. 96; Schuyler v. Southern Pacific Co., 109
Pac. 465; Savannah & W. R. Co. v. Meadows, 10 So. 141.

The plaintiff was shown to have been guilty of such
contributory negligence as precludes a recovery.  Con-
tributory negligence is such negligence as proximately
contributes to the injury; one of the moving causes of
the accident which resulted in the injury and without
which the injury would not have happened.  Such negli-
gence need not be in itself the sole cause of the injury,
but rather one of the joint causes out of which the acci-
dent arose.  29 Cyc. 505–507; 1 Thompson on Negli-
gence, secs. 169, 176.  It was incumbent upon plaintiff,
having no lawful right to be on the tracks, to exercise

the utmost vigilance for his own safety. Pluckwell v. Wilson, 5 Carr. & P. 375; Chicago Ry. Co. v. Roberts, 44 Ill. App. 179.

As to either trespassers or persons who are guilty of contributory negligence, although not trespassers, the defendant, even though its negligence might be described as "gross," is not liable for any omission or negligence occurring before actual discovery of the position of peril of the trespasser or other person guilty of contributory negligence. Williams v. Southern Pacific Co., 70 Cal. 120; Herbert v. Southern Pacific Co., 121 Cal. 227; Sego v. Southern Pacific Co., 137 Cal. 405.

*Dixon & Miller,* for Respondent:

The authorities are almost unanimous in holding that where the party injured or killed had not signed the contract between his employer and the railroad company, he was not bound by the terms or conditions of such contract. Yoemans v. Contra Costa S. W. Co., 44 Cal. 71; Fordyce v. Jackson, 56 Ark. 694; Blair v. Erie Ry. Co., 66 N. Y. 313; Chamberlain v. Pearson, 87 Fed. 420; Graham v. Pacific R. Co., 66 Mo. 536; Grand Trunk v. Stevens, 95 U. S. 655; Brown v. Sullivan, 71 Tex. 477; Nichols v. Ry. Co., 89 N. Y. 370. Such contracts are void as against public policy. Chicago Co. v. Solan, 169 U. S. 135; Inman v. S. C. Ry. Co., 129 U. S. 130; Phila. R. R. Co. v. Derby, 14 How. 485; Penn. R. Co. v. Butler, 57 Pa. 335; Munn v. Illinois, 94 U. S. 113; United States v. Joint Traffic Assn., 171 U. S. 505.

The jury did not find plaintiff to be a trespasser, and the trial judge expressed the same opinion at all times, both on the motion for judgment on the special findings and in his decision on the motion for a new trial. The appellate court should at all times give the same liberal interpretation to special findings in an endeavor to sustain the general verdict, if it is possible to do so. Antonian v. S. P. Co., 9 Cal. App. 718; Ready v. Peavy Elevator Co., 80 Minn. 154; Alhambra Addition Water Co. v. Richardson, 72 Cal. 606; Clementson on Special

Verdicts, p. 139; Union Traction Co. v. Vandercook, 32 Ind. App. 621.

Even if it should be held that plaintiff was a trespasser on the tracks at the time of receiving the injuries, the great weight of authority is that trespassers have many rights, which arise, to a considerable extent, from the duty imposed by law upon railways. Where a defendant is guilty of gross negligence, or acted with a reckless disregard of the rights of others or of the consequences of the act, it is liable in damages even to trespassers. 1 Sedgwick on Damages, p. 720; 3 Thompson on Trials, secs. 2555, 2556, 2569; Forrester v. Southern Pacific Co., 36 Nev. 247; Grand Trunk W. Ry. v. Lindsey, 233 U. S. 42. A railroad owes a general duty to use ordinary care and skill to avoid injuring others. 21 Am. & Eng. Ency. Law, 470. Licensees have higher rights than trespassers and are entitled to a higher degree of care at the hands of the railway. 33 Cyc. 760; Croft v. Railroad, 108 N. W. 1053; Railroad v. Dawson, 11 Am. Neg. Rep. 407; Davis v. Mich. Cent. Ry., 105 N. W. 877; Duhme v. Hamburg Am. P. Co., 184 N. Y. 404.

A railway company is liable if a plaintiff was injured by reason of wanton or wilful negligence. Williamson v. Southern R. Co., 51 S. E. 195; Blankensby v. Chesapeake & O. R. Co., 94 Va. 449; Fry v. St. Louis R. Co., 78 S. W. 566; 29 Cyc. 443.

Defendant is liable where he might have discovered the peril of the plaintiff by the exercise of reasonable care, or has neglected the most ordinary precaution in failing to do so, or where not knowing of the danger he has sufficient notice to put a prudent man on the alert. Denver R. R. Co. v. Buffehr, 30 Colo. 27; Dahlstrom v. St. Louis R. R. Co., 96 Mo. 99; Bogan v. Carolina Central R. Co., 129 N. C. 154; Buxton v. Ainsworth, 138 Mich. 532.

It is undoubtedly the law that if the negligence of the appellant which caused the injuries was gross, wilful, or wanton, the appellant cannot set up as a defense

the contributory negligence of plaintiff. The statute provides the doctrine of comparative negligence, and also the right of the jury in all cases to pass upon the negligence of the defendant, the contributory negligence of the plaintiff, and the comparative negligence of defendant and plaintiff. The jury has fulfilled its duty, both by the general verdict and by several of the special findings. Southwestern B. & I. Co. v. Schmidt, 226 U. S. 162; Konig v. N. C. O. Ry., 36 Nev. 181; Bunting v. Central P. R. Co., 14 Nev. 351; Davis v. Mich. Cent. R. Co., 19 Am. Neg. Rep. 325; Cederson v. Oregon N. Co. 38 Or. 343; Brendie v. Spencer, 125 N. C. 474.

By the Court, SANDERS, J., after stating the facts:

The case has been presented to us with care and ability. The cause is one of the utmost moment to the plaintiff, of general importance to the defendant company, and,. in some respects, is of interest to the profession.

The principal assignment of errors is involved in the discussion of the leading questions: What duty did the law impose upon the defendant to protect the plaintiff from the injuries of which he complains? Was the plaintiff guilty of negligence which directly or proximately contributed to his injuries? Was the defendant's negligence of such character as to .preclude the defense of contributory negligence? Did the agreement between the telegraph company and the defendant company operate as a bar to the right of plaintiff to maintain his action?

1. Our respect for the voluminous and exhaustive briefs, embracing, as they do, an analysis of a large number of the leading authorities bearing upon these questions of law, would ordinarily impel us to follow the argument of the learned counsel and pass upon all the points discussed, but the procedure adopted at the trial confines our inquiry to the real question presented for our consideration: Are the special findings of the facts inconsistent with the general verdict of the jury? If

they are, the law is imperative that they control the verdict, "and the court must give judgment accordingly." Stats. 1915, p. 110.

Criticism of statutes authorizing special interrogatories is often indulged in by those who would place the verdict of a jury above the law, but from the decisions of this and other courts we are impressed that the practice is universally approved. By submitting special interrogatories the expense and delay of a second trial may often be avoided, and by this practice the law is much more effectually separated from the fact than by giving hypothetical instructions. Lambert v. McFarland, 7 Nev. 159. The statute also enables the court to determine if a general verdict is due to an erroneous application of the law to the facts as actually found by the jury. Weck v. Reno Traction Co., 38 Nev. 300. The rule of construction of special findings of facts is to harmonize them, if possible, with each other and the general verdict. To justify a judgment on special findings, notwithstanding the verdict, the former must be such as absolutely to determine the controversy in favor of the moving party. Clementson, Special Verdicts, c. 8, pp. 131–149. In determining whether the general verdict or the answers to special interrogatories control, the findings are not to be aided by intendment, and the inconsistency between the verdict and the findings must be irreconcilable; that is, it must be such that no reasonable hypothesis or inference under the pleadings and evidence can remove the conflict.

In view of the findings in this case that cover every phase of the evidence, material or otherwise, we now approach the question: Can the findings be true and the verdict be permitted to stand? In the consideration of this question it must be understood that the same measure of justice, the same rule of conduct, and the same principle of law apply to the defendant corporation as to the unfortunate plaintiff.

Our construction of the pleadings is that the complaint proceeds upon the theory that the plaintiff at the time of

his injuries was lawfully upon the defendant's road. The answer of the defendant shows affirmatively that plaintiff was not there rightfully, but, on the contrary, was there in direct violation of positive instructions not to use the motor car upon defendant's tracks under any circumstances after dark. The plaintiff in his reply to the answer seeks to justify his presence upon the track after dark, and at the place of his injuries, upon the grounds that he was there in the regular course of the performance of his duties to his employer, and that the time lost in making necessary repairs to his velocipede car at Sparks prevented him from reaching the point where he was injured before dark, and it was the duty of the defendant "to use reasonable and ordinary care that the plaintiff was not injured while running said car on its tracks." The only charge of negligence resting against the defendant is, therefore, that the defendant's employees in the moving of its switch engine in question after dark carried no headlight, or other light, to warn plaintiff of its approach.

2, 3. The court defined negligence to be "the omission to do something which a reasonable man guided upon those considerations which ordinarily regulate the conduct of human affairs would do, or doing something which a prudent and reasonable man would not do." It is obvious that the first element of this definition is a duty to do or not to do a particular act. It applies to the plaintiff in the operation of his velocipede car, as well as to the defendant in the management and control of its engine and cars. But from the instruction given on the part of the plaintiff immediately following this definition, the jury were, in effect, told that if they believed from the evidence that the act or omission to display a headlight, or other light, was negligence, and that the plaintiff's injuries resulted therefrom, the defendant was liable; provided plaintiff's negligence did not proximately contribute to the injuries; and, though they find that the plaintiff's acts and conduct did contribute to his injuries, if they believe from the evidence that the act or omission complained of was wilful,

wanton, and in reckless disregard for the safety or life of the plaintiff, the defendant was liable, notwithstanding the contributory negligence of the plaintiff. The underlying error in the position taken by the learned presiding judge results from the assumption that a like duty to use care in the management and control of the engine rested upon the defendant, whether the plaintiff was rightfully or wrongfully upon the defendant's track at the time and place of the collision. The rightfulness or wrongfulness of the plaintiff's presence upon the track was an issuable or disputed fact left to the jury for its determination without the aid of instructions clearly and distinctly defining the duty the law imposed upon the parties in respect to the relative rights and reciprocal duties and obligations arising from the joint occupancy of the locus in quo. A general instruction which left it to the jury to apply the same standard of duty and use of care in the management and control of its trains and engines toward one wrongfully as to one rightfully upon the company's tracks is wrong. Hern v. So. Pac. Co., 29 Utah, 127, 81 Pac. 906. Where two contentions are made, as were here made, and the evidence tends to support both, it was the duty of the court to instruct upon both theories. Zelavin v. Tonopah-Belmont Dev. Co., 39 Nev. 1, 149 Pac. 188.

4. If we clearly interpret the position taken by the learned counsel for the plaintiff, the injuries were the result of the nonperformance or omission of a plain and manifest duty for the protection of human life, and the defendant cannot be heard to say in justification of its negligence that the plaintiff was at the time of his injuries at a place where he had no right to be. This rule does not apply where the party injured, knowing of the danger, purposely or negligently puts himself in its way. The application of the rule here would, in effect, require the company to, in the movement of its switch engines after dark, provide in advance appliances for protecting persons from the result of their negligence in running velocipede cars upon defendant's tracks after dark. Such an extreme rule of liability

would lead to unjust results, and would ignore the rule of contributory negligence. Even in cases of injury to an employee the law is well settled that he cannot prevail in an action for damages where his injuries sustained in the course of his employment were brought about by his own negligence in performing an act, the danger of which was so obvious and threatening that a reasonably prudent man under similar circumstances would have avoided it, if in his power to do so. Konig v. N. C. O. Ry. Co., 36 Nev. 181, 135 Pac. 141. The rule is equally well established that, though it may be shown that the defendant did not exercise care, yet no recovery will be allowed against it if it further appears that the injury would have been avoided if the person injured had exercised care on his own part. Patnode v. Harter, 20 Nev. 303, 21 Pac. 679; 20 R. C. L. 138. The plaintiff in the exercise of a gratuitous privilege in running his car upon defendant's tracks was bound to use the care a man of average prudence would use under similar circumstances, and one of the circumstances to be considered in this respect was the plaintiff's knowledge of the situation and its danger. He is held to know everything in respect to a situation and its dangers which he would have known had he exercised due care. Myers v. Boston & Maine R. Co., 72 N. H. 175, 55 Atl. 892. That it was the general duty of the defendant to display a light on its switch engine in moving after dark between the Reno and Sparks yards is not seriously controverted, but its failure so to do would not excuse the plaintiff from exercising ordinary care in voluntarily running his car after dark against positive instructions.

It is obvious from the facts found that the plaintiff knowingly and voluntarily chose the wrong track, and that he negligently continued his journey after dark up to the instant of the collision. Under these circumstances he placed himself in a position of too great danger to hazard his own safety upon a signal that might or might not be given. Certainly the situation in which he placed himself was too uncertain to authorize

him to omit taking those precautions which common prudence for his own safety would dictate. Railroad Co. v. Depew, 40 Ohio St. 125. When the plaintiff continued his journey after dark upon the wrong track it must be understood that the defendant's knowledge of his situation was in no respect superior to his own, nor can it be successfully contended that the engineer's failure to anticipate the plaintiff's possible or chance presence upon the left-hand track was in any respect different from the plaintiff's failure to anticipate that the switch engine without a light would be in his path. The running of a velocipede car after dark upon a railroad track is not in itself so innocent as to excuse the operator from the duty of exercising ordinary care, not only for his own safety, but, in a sense, for the safety of defendant's employees, passengers, or others lawfully upon its tracks. When on the road with his car the plaintiff recognized that for his own safety it was necessary for him to know the traffic movement of defendant's trains.

The jury specially found that the plaintiff received instructions about October 4, 1911, not to use his car upon defendant's tracks after dark; that plaintiff knew that between Reno and Sparks on the main line the left-hand track was used for the regular movement of trains and engines; that plaintiff was negligent in running his car after dark; that he was negligent in running the car westerly toward Reno after dark on the defendant's east-bound main-traffic track; that he was negligent in continuing his journey after it became dark after repairing his motor, and that though the rules of the defendant permitted switch engines to run on any track between the points named, it was negligent for plaintiff to run his car on the track on which he was injured; that the plaintiff as a reasonable man should have known that the defendant company was then using the left-hand track for its regular movement of trains between Sparks and Reno.

That the plaintiff's negligence was one, if not the proximate, cause of his injuries is a fact concerning

which reasonable minds could not differ. The only plausible pretext upon which these findings can be reconciled with the general verdict would be to hold that the jury was correct in its assumption or conclusion that, notwithstanding the plaintiff's negligence or want of ordinary care and reasonable diligence, "no light on engine" was the proximate cause of the injuries.

Ordinarily proximate cause is a question of fact, but it is a term sufficiently defined to enable courts to determine if from a given or undisputed state of facts in a case of negligence a verdict or finding thereon is binding or conclusive upon us. There is no evidence to weigh, nothing to be done but to decide whether from the issues, the findings and the verdict the latter meets the requirement of the law. Ophir Mining Co. v. Carpenter, 4 Nev. 534. It is not pretended that the plaintiff's negligence and wrongful entry upon the left-hand track was the occasion or remote cause of his injuries, nor can it be successfully contended that the injuries were the natural sequence of the defendant's negligence, for the reason that it affirmatively appears from the findings of the jury that the plaintiff failed to establish any duty or obligation on the part of the company to safeguard him in the running and operation of his velocipede car upon the wrong track, either by day or by night. But it is strenuously urged that it was the general duty of the company, under the circumstances in this case, to keep a constant lookout, and, having failed so to do, when a proper lookout would have prevented the injuries, the company is liable. This assumption is rebutted by the findings of the jury hereinabove referred to, which show that the negligent entry of plaintiff upon the wrong track was without excuse or justification. But, as is said in the case of Milwaukee, etc., Railway Co. v. Kellogg, 94 U. S. 469:

" * * * That, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence

of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

If it were shown that plaintiff's injuries were the result of the defendant's culpable ignorance of his perilous situation, he could appeal to the law for relief, but in view of the findings to the effect that the plaintiff in entering upon the wrong track was culpably ignorant of his danger, and that he consciously and negligently placed himself in its way, we are of the opinion that, under all the attending circumstances, the failure to keep a proper lookout was not the proximate cause of the injuries. The fact that pedestrians in large numbers were accustomed to use the tracks between Reno and Sparks as a walkway would not excuse or justify one of this class to voluntarily, for his own convenience or pleasure, run a velocipede car thereon. If injury resulted, such person would have to bear the consequences of his own wrong. Was plaintiff, who knew the traffic-movement rule, and who is not shown to be excusably ignorant of his danger, to be placed in a better position than a mere stranger? It is true the plaintiff may not have had in mind, as he testified, the switch engine and did not expect any train to be coming toward him without a light, but it was this expectation that proved to be disastrous. In excuse for not taking the proper track, it is urged that by the rules of the company switching engines were permitted to run on either track, but, notwithstanding this rule, the jury found that it was negligent for plaintiff to run his car on the track on which he was injured. It is further insisted that the jury found that the plaintiff, as a reasonable man, should have known, or expected, or had reason to expect, that the engine ought to comply with the rule of the company and carry the prescribed light so as to warn plaintiff of danger and the approach of the engine.

The effect of this finding is destroyed by the related finding that it was negligence on the part of plaintiff, notwithstanding the rule, to run his car on the track on

which he was injured. The plaintiff was not justified in relying upon any such rule, as the result shows. If a person could implicitly rely upon the company's employees performing their duties, and if such reliance would excuse the plaintiff from using precautions for his own protection, then there could be no room whatever for the application of the doctrine of contributory negligence.

Was the act or omission complained of of such character as to preclude the defense of contributory negligence? We have before us a "cold, unimaginative record." The collision of the car and engine was not of an unusual or remarkable character. The jury attributed the injuries to the negligence of both contending parties. But it is insisted that the defendant's act or omission transcended the bounds of negligence and became a wanton, wilful act perpetrated in reckless disregard of plaintiff's safety. The cases that have undertaken to define in abstract terms wanton or wilful conduct are legion. Before a court of review should so denominate any conduct it should be sure it has before it the judgment of a jury on that question. I. C. R. R. Co. v. Klein, 95 Ill. App. 231; Denny v. Chicago R. I. & P. Ry. Co., 150 Iowa, 460, 130 N. W. 364.

5. In response to the inquiry for a special finding in respect to the character of the defendant's negligence, the jury were asked: "Q. If you find that plaintiff's injuries were caused by the negligence of defendant or its employees, was such negligence gross or wanton or with a careless disregard for the safety of plaintiff, or aggravated misconduct?" The jury found: "Careless disregard." This finding rebuts the assumption that the act complained of was "wilful," "wanton" or "aggravated misconduct," or "reckless disregard" of plaintiff's safety.

Our conclusion is that the special findings of facts made by the jury are inconsistent with their general verdict.

The order and judgment appealed from are reversed. The cause is remanded for a new trial.

It is so ordered.

McCARRAN, C. J.: I concur in the order.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied. _____