FRANK BITTNER, as Administrator of CHARLES BITTNER, Deceased, Respondent, *v.* THE CROSSTOWN STREET RAILWAY COMPANY of Buffalo, Appellant.

1. ELECTRIC STREET RAILROAD — NEGLIGENCE — SPEED OF CAR. Where there is no law regulating the rate of speed of electric cars on a city street, the mere fact of such a car running at the rate of twelve or fifteen miles an hour does not constitute negligence; but it is for the jury to say, in view of the surrounding conditions at the time, whether such a rate of speed was excessive and, therefore, dangerous under the circumstances.

2. NON-RESPONSIBILITY OF COMPANY FOR MOTORMAN'S ERROR OF JUDGMENT. If, after a person crossing the track in front of an electric car has been struck down by the car, the motorman, in the exercise of his judgment in the sudden emergency, errs in what he does, as, in reversing the car, the company is not responsible for his error of judgment.

*Bittner* v. *Crosstown St. R. Co.*. 12 Misc. Rep. 514, reversed.

(Argued April 23, 1897; decided May 4, 1897.)

APPEAL from a judgment of the General Term of the Superior Court of Buffalo, entered June 1, 1895, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This was an action brought by the plaintiff as administrator of the estate of his infant son, Charles, to recover damages for his death, which he alleged to be due to the negligence of the defendant. The defendant operated an electric street railroad in the city of Buffalo and the accident in question occurred on October 17th, 1892, in the middle of the day, upon Seneca street. The boy was a few months over eight years of age, at the time of the occurrence, and was shown by the evidence to have been a bright and intelligent lad. He was running from the south side to the north side of the street and, there being between the car tracks and the sidewalk a manure wagon drawn by a pair of horses, he ran in front of it and coming upon the south track, within four or five feet of one of the defendant's cars, then proceeding eastwardly,

was struck by it. The car passed over him, and then, upon the reverse action being given by the motorman, in his effort to stop the car, it passed backward over his body. According to the evidence of one Toms, the car, at first, ran over the boy's legs and then, after having proceeded two or three car lengths, it stopped, backed over him and then, again, went forward and over him. Toms testified that he saw the boy try to raise himself, after the car had first passed over him, and that, before he succeeded in doing so, he was again struck down and crushed by the backing of the car. This witness testified that the car was going at the rate of twelve or fifteen miles an hour, and that the boy's face when running across the street was turned away from the car. As against the testimony of this witness, which was the evidence relied upon at the trial to sustain the plaintiff's cause of action, there was evidence given by a number of witnesses in flat contradiction. A police captain testified that Toms told him, a few minutes after the occurrence, that he did not see the car run over the boy. A police officer, who saw the accident from a point about one hundred feet away, testified that Toms came up only after the accident, and that the boy did not move after the car first passed over him. He also said that the car did not go beyond about half its length over the boy before its action was reversed and that it did not pass over him the third time. Another police officer, who saw the accident close by, corroborated the testimony of the other officer, with respect to how the car passed over the boy, and how it was reversed, and as to the boy's not moving. Three other witnesses, who saw the occurrence from different neighboring points, also, agreed that the car only passed over the boy a few feet, before it reversed and that the boy did not move after he was first struck down. The motorman testified that he was going at the usual rate of speed ; that a manure wagon was alongside of his car, between it and the sidewalk ; that the boy ran around the heads of the horses, about four feet ahead of the car and was almost immediately struck by it in the center of the track. He also testified that, as soon as he saw the boy, he reversed his car, so as

not to hit him, and that the effect of his action in reversing the lever was to throw him against the dashboard and that, then, upon the reverse motion being set up, he was thrown against the body of the car. He was not aware of having passed back over the boy and he said that he did not see Toms, with whom he was acquainted. The plaintiff recovered a verdict and the judgment upon the same was affirmed by the General Term of the Superior Court of Buffalo, in which court the trial was had. The two judges holding the General Term divided in opinion ; the effect of which division was to affirm the judgment. The defendant then appealed to this court.

*Porter Norton* for appellant. The plaintiff's intestate was guilty of contributory negligence, in the first instance, in dashing in front of the approaching car, and it was this negligence that made possible the whole series of events that followed, and which resulted in his death. ( *Whalen* v. *C. G. L. Co.*, 151 N. Y. 70 ; *Weston* v. *City of Troy*, 139 N. Y. 281 ; *Thompson* v. *B. R. Co.*, 145 N. Y. 196 ; *Babcock* v. *F. R. R. Co.*, 140 N. Y. 311 ; *Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 317 ; *Wendell* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 420 ; *Schmidt* v. *Couk*, 1 Misc. Rep. 227 ; *Friess* v. *N. Y. C. & H. R. R. R. Co.*, 67 Hun, 216 ; *Doller* v. *U. R. Co.*, 7 App. Div. 286.) There was no negligence shown on the part of defendant in the management of its car. (*Reich* v. *U. R. Co.*, 78 Hun, 417 ; *Thompson* v. *B. R. Co.*, 145 N. Y. 199 ; *Baker* v. *E. A. R. R. Co.*, 62 Hun, 39 ; *Dorman* v. *B. R. R. Co.*, 27 N. Y. S. R. 841 ; *Ogier* v. *A. R. Co.*, 88 Hun, 486 ; *Cordes* v. *T. A. R. R. Co.*, 21 N. Y. S. R. 461 ; *Kuhnen* v. *U. R. Co.*, 10 App. Div. 195 ; *Little* v. *S. R. Co.*, 87 Mich. 205 ; *Donnelly* v. *B. C. R. R. Co.*, 109 N. Y. 21 ; *Alexander* v. *R. C. B. R. R. Co.*, 128 N. Y. 13 ; *Chrystal* v. *T. & B. R. R. Co.*, 124 N. Y. 519.) The judge's charge was erroneous. (*Chapman* v. *McCormick*, 86 N. Y. 479 ; *O. W. Co.* v. *Griffin*, 67 Fed. Rep. 659 ; *Zabriskie* v. *Smith*, 13 N. Y. 322 ; *Carroll* v. *Tucker*, 7 Misc. Rep. 482 ;

*Krulder* v. *White*, 60 N. Y. S. R. 614; *Greene* v. *White*, 37 N. Y. 405; *Doller* v. *U. R. Co.*, 7 App. Div. 283; *Bello* v. *M. S. R. Co.*, 2 App. Div. 313; *Thompson* v. *B. R. Co.*, 145 N. Y. 196.)

*Emory P. Close* for respondent.    Defendant was negligent in running its car at a speed of fifteen miles an hour. (Patterson's R. Law, 276, § 267; *Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524; *Thompson* v. *N. Y. C. & H. R. R. R. Co.*, 110 N. Y. 636; *De Loge* v. *N. Y. C. & H. R. R. R. Co.*, 92 Hun, 149; *Adolph* v. *C. P., N. & E. R. R. R. Co.*, 76 N. Y. 530.)    Defendant's excessive speed, without warning, was the cause of the injuries. (*Oldfield* v. *N. Y. & H. R. R. Co.*, 14 N. Y. 310; *Keller* v. *Haaker*, 2 App. Div. 245.)    There was an entire absence of contributory negligence on the part of plaintiff's intestate. (*Moebus* v. *Herrmann*, 108 N.Y. 349; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 203; *McClain* v. *B. C. R. R. Co.*, 116 N. Y. 459; *Reilly* v. *T. A. R. R. Co.*, 16 Misc. Rep. 11; *McDonald* v. *T. A. R. R. Co.*, 16 Misc. Rep. 52; *Wendell* v. *N. Y. C. & H. R. R. R. Co.*, 91 N. Y. 428; *Lyman* v. *R. Co.*, 114 Mass. 83; *Thurber* v. *H. B., M. & F. R. R. Co.*, 60 N. Y. 326; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 83 N. Y. 620.)    The evidence as to defendant's car running back on to the boy and going over him the second and third time establishes the negligence of the defendant without any question as to the contributory negligence of plaintiff's intestate. (S. & R. on Neg. § 36; *Mallard* v. *R. R. Co.*, 7 N. Y. Supp. 666.)    The charge of the court on defendant's negligence was proper. (*Hoyt* v. *N. Y., L. E. & W. R. R. Co.*, 118 N. Y. 399; *Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 38; 16 N. Y. 507; 11 N. Y. 61; 80 N. Y. 614; 77 N. Y. 495; 47 N. Y. 570.)

GRAY, J.    If it were not for the testimony which was given by the witness Toms upon the trial, it would not be possible to say that there was any evidence upon which negligence

could be predicated of the defendant. The history of the occurrence shows that the deceased heedlessly ran in front of the car and in such close proximity to it, as to render its striking him a certain occurrence. There is no conflict in the testimony with respect to the principal facts. The boy started to cross the street in the middle of the block, when a vehicle was proceeding between him and the car tracks; which, from its peculiar construction, precluded a view beyond it. Running upon an angle across the street, he passed around the horses' heads, without looking for, or apparently seeing, the approaching car upon the other side of the wagon. He was familiar with the locality and the evidence warranted the inference that he was quite capable of taking care of himself, at least, to the extent demanded by the occasion. He was on his way from his sister's residence to his grandfather's, upon the other side of the street; as he had been in the habit of doing. Except for the testimony of Toms, that the car was proceeding at a rate of from twelve to fifteen miles an hour; that, after it had passed over the boy's body, it went as much as two or three times its length before it was stopped, and that then the boy was still living and was endeavoring to raise himself up from the ground, when the car backed down over him and, then, was impelled forward and again over him the third time, there would be no ground whatever for saying that any question was left open for the jury to pass upon, with respect to the conduct of the motorman. Toms' evidence was so shaken as to its credibility by the other testimony in the case, that it became of the highest importance that the jury should be so carefully instructed by the trial judge upon the law applicable to the facts, as that there should be no room for a belief that they might have been misled. There was no negligence in the mere fact of the car running at a high rate of speed. No law regulated that, and it was for the jury to say, in view of the surrounding conditions at the time, whether such a rate of speed, if they believed Toms' testimony about it, was excessive and, therefore, dangerous under the circumstances.

While we think the evidence to show negligence in the motor-man was of the very slightest character and barely.to be relied upon, in view of the other testimony and of the probabilities of the situation, we will concede that it may have been sufficient to raise a question for the jury, and we will proceed to consider the question in the case upon which the judges differed at the General Term.    That question arose upon a request made by the defendant that the jury should be instructed, " that the defendant is ˙not responsible for the error in judgment, if there was any, on the part of the motorman, in the manage-ment of the car after it struck the boy."    The trial judge ruled upon this request as follows : " I have already charged you upon this proposition."    Referring to the portion of his charge, to which˙he must have referred, it reads as follows : " I may say, if the defendant was entirely free from fault in the first instance, or if the boy was guilty of negligence in running upon the track in the way he did, and the car had passed over him, a number of feet beyond him, and the boy was injured in the legs, as it is claimed by one of the plain-tiff's witnesses, and was attempting to get up from the track, and the motorman was careless in the management of his car by running back upon him, and then killing him, the question of whether or not the boy was guilty of negligence in the first instance would be of no importance in that condition of things, and the plaintiff could recover, notwithstanding the boy was negligent in first going on the track."

The defendant was entitled to have the jury clearly instructed, that an error in the exercise of judgment by the motorman would not make the defendant liable for the results in the man-agement of the car, in the emergency which occurred after the deceased was struck down, and the charge did not cover that point ; or, at least, not in such exact language as, in our judg-ment, to make it perfectly clear to the jurors' minds.    To instruct them that, if the motorman was careless in so manag-ing his car as to run back upon the boy, the plaintiff might recover, was not the clear equivalent of an instruction that, if the motorman erred in judgment in what he did after the car

11

struck the boy, the defendant would not be responsible for that error of judgment. The evidence in the case would have warranted the jury in finding that the deceased was guilty of contributory negligence, in placing himself directly in front of the passing car, and that the motorman was not guilty of any negligence in striking him. If they should have reached that conclusion and were then brought face to face with the subsequent situation, after the boy had been knocked down and run over, they could only return a verdict for the plaintiff upon the basis of some act of negligence then occurring on the part of the defendant's servant, the motorman, by which the accident was aggravated. If they could believe the evidence of the witness Toms, that the car had passed so far beyond the boy and then, while he was still alive, was backed down upon him and, again, was sent over him, they could, perhaps, say that the motorman was careless in the management of his car at the time and that, through such carelessness, the boy was in fact killed. But if they believed that the motorman was endeavoring, in the exercise of his judgment, to prevent injury to the boy, then there was no carelessness on his part, but merely an error of judgment; for which the defendant could not be held responsible. Upon the evidence, it appears that the motorman was confronted with a sudden emergency and it should have been distinctly stated to the jury that if, in what he did, he used his judgment, the defendant was not responsible; even if it was an error which brought about the lamentable results claimed. Even the failure to exercise the best judgment would not be evidence of negligence. (*Wynn* v. *C. P., &c., R. R. Co.,* 133 N. Y. 575.) Judge HATCH, in his opinion at the General Term, has very fully reasoned out the proposition, and it is not necessary for us to say more than we have said.

For the reasons given the judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur. ·

Judgment reversed.