## CLARK v. COLORADO & N. W. R. CO.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1908.)

No. 2,695.

1. CARRIERS (§ 244*) — WHO ARE PASSENGERS — INVITATION OF CARRIER'S EMPLOYÉS.

Neither the master mechanic of a railroad nor a conductor, nor an engineer of a train, has any implied authority to agree on behalf of the company to carry a person on such train without payment of fare.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1115; Dec. Dig. § 244.*]

2. RAILROADS (§ 276*)—INJURIES TO PERSONS ON TRAINS—PERSONS RIDING AT INVITATION OF EMPLOYÉS—RIDING ON ENGINE.

One who accepted an invitation from the master mechanic of a railroad and a conductor and an engineer of a train to ride in the cab of an engine without payment of fare is presumed to have known that such invitation was without authority, and not only did not become a passenger, to whom the carrier owed the duty of care as such, but assumed all of the known hazards incident to such exposed position; and there can be no recovery from the company for his injury or death, due to such dangerous position, unless caused by the wanton or reckless act of its servants.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 884; Dec. Dig. § 276.*]

In Error to the Circuit Court of the United States for the District of Colorado.

Sterling B. Toney (Henry V. Johnson and R. Burge Toney, on the brief), for plaintiff in error.

O. L. Dines (E. E. Whitted, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. This is an action instituted by the widow of J. F. Clark against the defendant railroad company to recover damages for personal injury resulting in his death. The court sustained a demurrer to the petition, which presented two objections thereto: (1) That the petition does not state facts sufficient to con-

---

stitute a cause of action; and (2) because it discloses that the deceased was guilty of negligence directly contributing to his injury. The plaintiff below declining to plead further, final judgment was entered on the demurrer.

The substantive facts disclosed by the petition are as follows: The defendant railroad was operated between the city of Boulder and the town of Eldora, in Boulder county, Colo. On the 15th day of July, 1906, the said J. F. Clark was invited by the conductor, engineer, and master mechanic of the defendant company to ride in the cab of an engine drawing a train of cars on said road. While so traveling in said cab the engine collided with the end of a freight car which defendant's employés had run out on a siding of the railroad track, but left the end or corner of said car protruding onto the main track, so that the said engine in passing collided therewith, breaking in the side of the cab on which the said J. F. Clark was sitting or standing, whereby he was killed. The petition alleges "that deceased was not an employé of the defendant company and was not a passenger for hire; that is, was not required to pay for traveling on said car." The prayer of the petition is for $25,000 damages.

It will be observed that, while the petition discloses that the engine in question was drawing a train of cars, it does not allege that it was a train of passenger cars, adaptable to and used for the carriage of passengers. Non constat, it may have been a freight train, which did not carry passengers at all. Therefore the case presented by the petition is that the deceased, without paying or agreeing to pay any fare, establishing a contractual relation between him and the carrier for his safe carriage, voluntarily entered into the cab of a locomotive engine to take a free ride for his own accommodation.

To avoid the obvious nonliability of the defendant railroad company for said Clark's death, the petition alleges that he was so much in their personal favor that he received simultaneously an invitation from the conductor, the engineer, and the master mechanic to ride in the engine cab. As the petition does not aver that either of said employés had authority to extend such invitation, the authority must arise, if at all, from mere implication. Most certainly no such authority can be assumed to have resided with the master mechanic, who had no connection whatever with the operation of the railroad train while running. Judge Caldwell, in Condran v. Chicago, M. & St. P. Railway Company, 67 Fed., loc. cit. 523, 14 C. C. A. 508, 28 L. R. A. 749, said:

"It is a matter of common knowledge, of which the court will take judicial notice, and of which the public are bound to take notice, that railroad passenger trains are operated to carry passengers for hire. They are not eleemosynary agencies. It is equally well settled that the authority of a railroad conductor does not extend to the carrying of passengers without the payment of the regular fare."

So Judge Sanborn, in Purple v. Union Pacific Railroad Company, 114 Fed., loc. cit. 126, 51 C. C. A. 567, 57 L. R. A. 700, said:

"A contract is indispensable to the relation of carrier and passenger. The minds of the parties must meet upon the agreement that the carrier will transport and the passenger will pay for the transportation. In the absence of a specific agreement or permission by the proper officer of the transporta-

tion company that the latter will carry the passenger without compensation. This contract of carriage may, it is true, be express or implied; but, if it does not exist in either form, the relation of carrier and passenger cannot have been created. An implied agreement to pay fare, and hence the relation of carrier and passenger, undoubtedly arises where one enters a passenger car and rides towards his destination. But it is equally true that if one enters and rides under an express or implied agreement with a conductor. whom he knows or has reasonable cause to believe has no authority to make such a contract, that he shall not pay his fare, but shall cheat the company out of the transportation, no contract of carriage is created; but the existence of such an agreement is conclusively negatived by the actual fraudulent contract, so that it cannot exist."

As the petition alleges that the deceased was not a passenger for hire, he knew, what every man is presumed to know, that the railroad was being operated for hire. If so, he knew that he was cheating the railroad out of its rightful due, as he certainly understood that the men whose guest it is claimed he was were not to pay it for him. Every sensible man comprehends that, while a railroad conductor is in charge of the train, he is placed there by the company to collect fares from passengers, and if he neglects this duty he is wronging his employer. His very position and office as conductor advise every person who enters upon the train to be carried that, presumptively, he is without authority to carry him free of charge. He also knows that the engineer in his cab has nothing to do with the admission of a passenger to the train for carriage. Much less had either the engineer or the conductor authority to invite the deceased to take passage in the engine cab. The law imputed to him, when he entered the cab, knowledge of the fact that the railroad company had not constructed or designed such a place for the carrying of passengers. It is a place fashioned and intended alone for the engineer and fireman. It is equipped with a narrow seat on the right-hand side for the engineer, and a corresponding seat on the left-hand side for the fireman, with a small space between for the engineer when standing at the throttle of the engine and for the fireman when shoveling coal. It is necessarily exclusive of outsiders, who by their presence and talk are liable to divert the attention of the engineer and fireman from their required constant watchfulness. Public policy itself demands this rule, and forbids any deviation from its observance.

The authorities are in harmony in holding that in a place like an engine cab, drawing a train of cars, the person who voluntarily enters therein to ride is presumed to know that it is not designed for such use, and no presumption arises in favor of such person that the engineer and conductor have either express or implied authority to grant him such permission. Robertson v. N. Y. & E. R. R. Co., 22 Barb. (N. Y.) 91; Powers v. Boston & M. R. Co., 153 Mass. 188, 26 N. E. 446; Eaton v. Delaware, L. & W. R. Co., 57 N. Y. 382, 15 Am. Rep. 513; Files v. Boston & A. R. Co., 149 Mass. 204, 21 N. E. 311, 14 Am. St. Rep. 411; Whitehead v. St. Louis, I. M. & S. Ry. Co., 22 Mo. App. 60. While some courts have gone to considerable length in holding railroad companies responsible for the acts and assumptions of their employés while in positions of apparent authority, yet, when requested to hold that there is any presumption

in favor of the authority of the employés to permit third persons to use places and instrumentalities obviously not designed therefor by the master, they come to a halt If a conductor or engineer should invite a person to ride on the cowcatcher, a cross-beam is front of the engine, or on a brake-beam of a moving car, the foolhardy acceptor, receiving an injury thereby, would not be heard to say that he assumed the conductor or engineer had authority from the railroad company to invite him to ride there.

By voluntarily entering the engine cab to ride, the deceased assumed all the known hazards incident to such exposed position, because it is not a place designed by the railroad company for carrying passengers, and because it is a known place of increased danger. If a bridge be down, or any obstruction be on the track, the engine first encounters the danger and incurs the disaster. Danger lurks in such position. It was the side of the cab on which Clark stood or sat that first encountered the projecting end or corner of the car on the side track. The side of the cab was crushed in, which occasioned his injury. No derailment of, or other injury to, the train is alleged. So the fact is confronting that, had the deceased not chosen to ride where he did, no harm would have come to him. In voluntarily assuming such extrahazardous position he was guilty of contributory negligence. This proposition of law has recently been announced by this court in Chicago G. W. Ry. Co. v. Mohaupt (C. C. A.) 162 Fed. 665. It is reinforced by the following pertinent decisions: Doggett v. Illinois C. R. Co., 34 Iowa, 284; Radley v. Columbia Southern R. Co., 44 Or. 332, 75 Pac. 212; Texas & P. R. Co. v. Boyd, 6 Tex. Civ. App. 205, 24 S. W. 1086; Files v. Boston & A. R. Co., 149 Mass. 204, 21 N. E. 311, 14 Am. St. Rep. 411, and citations; St. Louis, K. C. & C. R. Co. v. Conway (C. C. A.) 156 Fed. 234, 235.

Counsel for plaintiff in error placed great stress in argument upon the contention that, notwithstanding the deceased may have been in an improper place on the engine, he was not a trespasser, but a licensee, and therefore the company owed him the duty not to wantonly or recklessly injure him. This may be conceded. The contention of counsel is that the petition charges gross negligence in the switching crew of the defendant company leaving the end of the freight car on the siding so as to conflict with the main track. In the first place, there is no allegation in the petition of wanton and reckless conduct by the defendant's employés. "The term 'gross,' in this connection, is nothing but an epithet. It means no more than the failure to exercise ordinary diligence in the circumstances of the particular case. It distinguishes no legal degree of negligence, and it is not error to refuse to apply it to the negligence for which a defendant may be liable, because its use merely tends to create doubt and to increase confusion." Purple v. Union Pacific R. Co., 114 Fed., loc. cit. 130, 51 C. C. A. 571 (57 L. R. A. 700).

Even had the petition charged wantonness or recklessness in the switching crew, as applied to the instance at bar it would not have helped the case. The following excerpt from the well-considered opinion in Eaton v. Delaware, L. & W. R. Co., 57 N. Y., loc. cit. 394, 15 Am. Rep. 513, presents the correct rule:

"But it is said that by the act of the conductor the plaintiff was lawfully on the train, and that for this reason the defendant was liable to him for the negligence of its servants. With due submission, this is simply begging the question. The plaintiff could only be lawfully on the train by an authorized act of the conductor. The question still recurs: Had the conductor the authority to take plaintiff on the train? If not, he could not lawfully be there. It is not necessary to consider whether he was a trespasser. It is enough to hold that a duty to be careful toward him would only spring up on the part of the defendant by an act on the conductor's part coming within the scope of his authority."

The switching crew did not know that the deceased was on the engine, and had no reason to anticipate that any passenger would be in such exposed position. Nor did the engineer or conductor know or have reason to anticipate that the freight car extended onto the main track. While it is to be conceded that it was a culpable, negligent act on the part of the switching crew in not taking pains to see that the freight car cleared the main track, the deceased, in voluntarily riding in the engine cab—a place not designed for the carriage of passengers, and in which he would obviously be exposed to first encounter any obstruction that might be on the track—was none the less guilty of contributory negligence.

Counsel for plaintiff in error rely chiefly upon the case of Philadelphia & Reading Railroad Company v. Derby, 14 How. 468, 14 L. Ed. 502. It is deemed sufficient to say of that case that the pronouncements therein are predicated of a state of facts distinctively distinguishable from the case at bar: (1) The cab there spoken of, in which the injured party was riding, was evidently not such an engine cab as the one here in question. It was a carrying car, constructed and designed for the president and officials of the railroad on inspection tours, and the like, and was, therefore, a place for carrying passengers. (2) The injured party was a stockholder in the company, and was invited by the president thereof, who had apparent authority therefor, to ride with him in the place designed for the carriage of persons. (3) The employés of the company in charge of the track had special instructions to keep it clear of obstructions because of the coming, on this specially equipped car, of the officials of the road, who could be expected to be where they were riding when the car came.

Other decisions cited in the brief of counsel for plaintiff in error are not in point in their facts, and are not of controlling authority.

It results that the judgment of the Circuit Court must be affirmed.