RAINEY et al. v. OREGON SHORT LINE R. CO.

No. 4190.   December 4, 1924.   (231 Pac. 807.)

1.   RAILROADS—WIFE OF EMPLOYEE HELD TRESPASSER NOT ENTITLED TO DAMAGES FOR INJURIES NOT WILLFULLY, WANTONLY, OR RECKLESSLY INFLICTED. Wife of fire inspector in railroad yards who accompanied him on trip through yards and was there injured when their automobile and train collided, was trespasser, and railroad is not liable; injury not being willfully, wantonly, or recklessly inflicted.[1]

2.   RAILROADS—DOCTRINE OF LAST CLEAR CHANCE DOES NOT APPLY WHERE DEFENDANT USED BEST JUDGMENT IN EXTRICATING TRESPASSER FROM PERIL. Trespasser in railroad yards, who by her own act put herself in perilous situation and was injured, cannot invoke last clear chance doctrine to secure damages,

---

[1] *Palmer* v. *Railroad*, 34 Utah, 466, 98 P. 689; *Hern* v. *Southern Pacific Co.*, 29 Utah, 127, 81 P. 902.

See (1) 33 Cyc. pp. 770, 755; (2) 33 Cyc. p. 855.

where defendant's servants used best judgment in extricating her, though they made reasonable mistake, which increased the injury.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

Action for personal injuries by Catherine Rainey and Peter L. Rainey against the Oregon Short Line Railroad Company. Judgment for defendant, and plaintiff appealed.

AFFIRMED.

*Willard Hanson, J. J. Whitaker,* and *A. H. Hougaard,* all of Salt Lake City, for appellant.

*George H. Smith, J. V. Lyle, Robert B. Porter,* and *Dana T. Smith,* all of Salt Lake City, for respondent.

FRICK, J.

Catherine Rainey and Peter L. Rainey, her husband, pursuant to the statutes of Idaho, commenced this action in the district court of Salt Lake county as plaintiffs against the defendant to recover damages for personal injuries, which, it is alleged, Catherine Rainey sustained through the alleged "wanton and willful" negligence and misconduct of defendant's employees. In view that no damages are sought on behalf of Peter L. Rainey for any injury he sustained, Catherine Rainey will be considered as the sole plaintiff in this action.

The defendant answered the complaint denying the alleged negligence and set up affirmative defenses, as will hereinafter more fully appear.

The case is somewhat unusual in its facts and circumstances. A careful reading of the evidence, all of which is preserved in the bill of exceptions, discloses substantially the following facts:

Peter L. Rainey, the husband of the plaintiff, was em-

Appeal from Third District

ployed by the defendant in the capacity of fire chief in de-
fendant's railroad yards at Pocatello, Idaho. The defendant
owns rather extensive railroad yards in Pocatello, containing
a large number of shops, warehouses, and other buildings,
together with such other property that is used in connection
with the operation of its line of railroad known as the Oregon
Short Line, which it owns and operates in the states of Utah,
Idaho, and Oregon, with numerous branch lines. It was the
duty of Peter L. Rainey to pass through the yards of the
defendant from time to time for the purpose of detecting
and preventing fires. In discharging his duties he at times
would go through the yards on a bicycle and sometimes on
foot. On the 9th day of April, 1923, some time after 5 o'clock
p. m., Mr. Rainey, in entering upon a tour of inspection
through the yards, invited his wife, Catherine Rainey, to ac-
company him in his Dodge automobile. Mr. Rainey testified
that a little after 5 o'clock was the usual hour in the evening
to make an inspection, for the reason that the workmen quit
work at 5 o'clock and by making the rounds at that hour he
could observe whether the workmen had left the fires they
were using during the day in a safe condition. On the eve-
ning in question, Mr. Rainey had been using his automobile
for some other purpose on the streets of Pocatello, where he
met and invited his wife to take a ride, and they together
started on a tour of inspection in the automobile through the
railroad yards. In the hope of aiding the reader to a clearer
understanding of what follows, we here insert a sketch of
that part of the railroad yards in which the accident oc-
curred:

It will be observed that the left-hand side of the sketch is north. The sketch is drawn to scale and is a facsimile, al-though reduced in size, of the large map which was intro-duced in evidence at the trial. Figure 1 on the sketch repre-sents the "coach shop," which is a large building. Figure 2 represents the "steel car shop extension," which is another large building and is immediately east of the coach shop. Figure 3 is what is called the "eating house." Figure 4 is a sign requiring the employees to keep the crossing clear for the fire engine. Figure 5 is a sign warning the employees to "stop, look and listen" before crossing the railroad track. The main railroad track on which the accident occurred is indicated by the letters R. R., and the other lines running parallel with the main tracks are other tracks used for various purposes, the letters P P indicate a passageway 10½ feet wide which was used by the employees, including Mr. Rainey, in passing through the yards. On the evening in question, about 5:30 o'clock, Mr. Rainey and his wife, the plaintiff, were riding in an automobile on the passageway, marked "P P" in an easterly direction, that is, in the direc-tion indicated by the arrow on the curve of the passageway. At the same time a train, consisting of four cars and an en-gine and tender, was being backed or switched on the main

track in a southerly direction; that is, in the direction indi-
cated by the arrow near the letters R. R.   The building,
Figure 1, is a tall building, the east wall of which is about 19
feet from the center of the track marked "R. R."   The testi-
mony shows that in switching the cars there were five men in
the crew, the engineer, the fireman, two switchmen, and the
switch foreman.   The switch foreman was, however, not with
the train crew at the moment the collision occurred.   Just
before the collision occurred, Mr. Rainey was driving his
automobile eastward toward the track, R. R.   In approaching
the track he drove south of the building, figure 1, and, while
driving there, could not see the railroad track or the train
of cars that was being moved south on the track at a rate of
about six miles per hour toward the crossing, marked "C."
The trainmen could not see Mr. Rainey's car, until it had
passed to the east of the building, figure 1. ·The fireman and
one of the switchmen were on the west side of the train of
cars, while the other switchman was on the rear end of the
last car and on the east side of the same.   The fireman testified
that he saw Rainey's car after it came from behind the wall
of the building, figure 1, and at the moment told the engineer
to stop the train.   At about the same moment the switchman
gave the engineer a stop signal.   While the fireman testified
that Mr. Rainey was traveling at a rate of about 20 miles per
hour, the latter insisted that he was going much slower than
that.   As a matter of fact, however, Mr. Rainey could not stop
his automobile, nor could the trainmen stop the train, in
time to avoid the collision which occurred on the crossing
marked "C."   The rear end of the car on the train was
what the trainmen call a coach or outfit car with steps on
both sides like a passenger coach.   The rear car shoved the
automobile along on the track until it reached the point
marked "X," at which point the automobile was wedged be-
tween the east side of the car and the west side of the build-
ing, figure 2.   The distance between the outer edge of the
easterly rail and the wall of the building is 5 feet 3 inches.
After the rear car had passed some 12 or 14 feet southerly
from the southwest corner of the building, the train stopped.

The front end of the automobile was to the north, while the rear was to the south. The front end of the automobile was forced against the wall of the building, while the right-hand rear wheel was not quite against the wall. When the train was finally stopped, Mrs. Rainey, the plaintiff, was lying under the front part of the running board on the right or east side of the automobile with her feet to the north and her head to the south, while Mr. Rainey was lying on the top of the same running board with one leg and foot under it and his head on the rear fender.

At this point there is some conflict between the testimony of Mr. Rainey and the trainmen. Mr. Rainey says that, when he found the automobile was wedged in between the railroad coach and the building, he said to the trainmen, "For God's sake, don't move the train; you will kill my wife." He, however, also admitted that he had testified that what he said was this: "For God's sake, get my wife out of here before they kill her." He, however, explained that in making the two statements he meant the same thing. Upon the other hand, the trainmen testified that they did not hear Mr. Rainey make the foregoing statement and that he made no statement. They, however, said that Mrs. Rainey was crying and was asking to be relieved from her perilous situation. The trainmen went around the rear end of the coach between it and the building as far as they could, and, after looking over the situation, came to the conclusion that in order to relieve Mrs. Rainey the pressure upon the automobile would have to be released, and that it could only be released by moving the railroad coach forward or toward the north. In order to do that they concluded to move the train forward toward the north, which was accordingly done.

At this point the statements of Mr. and Mrs. Rainey and the trainmen again conflict. Mr. and Mrs. Rainey said that the movement of the train forward caused the automobile to move with the train, and that the movement caused Mrs. Rainey's most serious injury, while the trainmen said that the automobile did not move at all, and that the only result of the moving of the train was to release the automobile,

which the trainmen then lifted aside, and thus released Mrs. Rainey from her perilous position.

We remark here that although there is a conflict as herein indicated, yet the conflict is not material in view of the conclusion we have reached, as hereinafter indicated.

Immediately after the train was moved forward, Mrs. Rainey was taken from under the automobile and was taken to building, figure 3, and there temporarily cared for, while Mr. Rainey was cared for outside of the building.

The trainmen testified that the only way to release the automobile from the pressure caused by the railroad coach against it was to move the coach, and that that could only be done by moving the train forward, while Mr. Rainey insists that it was the moving of the train forward that caused Mrs. Rainey's serious injuries. The record is, however, entirely devoid of any statement or suggestion on the part of Mr. or Mrs. Rainey, or any one else, of how the automobile could have been released without moving the train. Nor is there any suggestion or intimation by any one with respect to how Mrs. Rainey could have been released from her perilous position without moving the train forward and in that way releasing the pressure on the automobile.

Upon substantially the foregoing evidence, the defendant asked the court to direct the jury to return a verdict in its favor upon the grounds that no negligence had been shown on the part of the defendant's employees, and that there was no evidence from which the jury could find that defendant's employees were guilty of any misconduct of any kind or nature, etc. The court granted the request and instructed the jury to return a verdict in favor of the defendant. Judgment was accordingly entered upon the verdict, from which this appeal is prosecuted.

Mrs. Rainey, the plaintiff, insists that the court erred in directing a verdict for the defendant. Upon the other hand, the defendant contends that under the undisputed evidence Mrs. Rainey was wrongfully in the yards of the defendant; that, as a matter of law, she was a trespasser; that she, by her acts, brought about her predicament; and that defendant

owed her no duty except to avoid injuring her through wanton, willful, or reckless conduct on the part of its employees. Plaintiff's counsel, however, contend that Mrs. Rainey was not a trespasser, and therefore the doctrine contended for by defendant does not apply.

In support of their contention plaintiff's counsel cite the case of *Campbell* v. *Harris*, 4 Tex. Civ. App. 636, 23 S. W. 35. That case does not support counsel's contention. In that case it was held that the wife of the employee was not a trespasser because at the time of the injury complained of she, "by permission of the company, was on a visit to him (her husband) and was injured during the night by a derailment of the car in which they were sleeping." The injury in that case occurred through the fault of the conductor. It further appears from the statement in the case that it was the custom among the employees to have their families visit them with the knowledge and consent of the company. That case, therefore, has no application here.

Applying the law as laid down by the overwhelming weight of authority to the undisputed facts in this case, the plaintiff must be held to have been wrongfully in the railroad yards of the defendant company, and hence the only duty that was imposed upon the company was not to willfully, wantonly, or recklessly injure her. In other words, that the defendant owed her no affirmative duty. 3 Elliott on          1
Railroads (3d Ed.) pp. 442, 464; *Palmer* v. *Railroad*, 34 Utah, 466, 98 P. 689, 16 Ann. Cas. 229; *Hern* v. *Southern Pacific Co.*, 29 Utah, 127, 81 P. 902; *Skirvin* v. *Louisville & N. R. R. Co.* (Ky.) 100 S. W. 308; *Fischer* v. *Columbia & P. S. R. Co.*, 52 Wash. 462, 100 P. 1005; *Morris* v. *Georgia R. & B. Co.*, 131 Ga. 475, 62 S. E. 579; *Clark* v. *Colorado & N. W. R. R. Co.*, 165 F. 408, 91 C. C. A. 358, 19 L. R. A. (N. S.) 988. In many of the foregoing cases the injured parties were invitees, and, as such, came upon the premises through invitation of their relatives, as in the case at bar. We do not deem it necessary to cite more of the very large number of cases that support defendant's contention as hereinbefore stated.

The case of *Palmer* v. *Railroad,* supra, has been approved and followed in a large number of cases, and the doctrine therein announced has become firmly established in this as well as in a large majority of the states of the Union.

Plaintiff's counsel, however, contend that in view of the facts in this case, although plaintiff was a trespasser, the defendant, nevertheless, owed her the duty of exercising ordinary care to avoid injuring her after discovering her helpless and perilous situation. In other words, they invoke what is commonly called the "last clear chance doctrine." In support of counsel's last contention, they cite and rely upon the following cases: *Railway Co.* v. *Cappier,* 66 Kan. 649, 72 P. 281, 69 L. R. A. 513; *L. & N. R. R. Co.* v. *Vanarsdell's Adm'r* (Ky.) 77 S. W. 1103; *Isabel* v. *Hannibal & St. J. R. R. Co.,* 60 Mo. 475; *Rosenthal* v. *New York S. & W. R. Co.,* 112 App. Div. 436, 98 N. Y. 479; *Heddles* v. *Chicago & N. W. Ry.,* 77 Wis. 228, 46 N. W. 115, 20 Am. St. Rep. 106; *Northern Cent. Ry. Co.* v. *State, etc.,* 29 Md. 420, 96 Am. Dec. 545; *American Car & Foundry Co.* v. *Inzer* (Ind. App.) 86 N. E. 444; *Bittner* v. *Crosstown Ry. Co.,* 153 N. Y. 76, 46 N. E. 1044, 50 Am. St. Rep. 588; *Bogan* v. *Carolina C. Ry. Co.,* 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418; *Inland & Seaboard C. Co.* v. *Tolson,* 139 U. S. 551, 11 S. Ct. 653, 35 L. Ed. 270; *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485. We add to the foregoing the case of *Dyche* v. *Vicksburg, Shreveport & Pac. Rd. Co.,* 79 Miss. 361, 30 So. 711. We cite the latter case because it is one of the few cases that does support counsel's contention, as a careful examination of the foregoing cases will disclose.

While it is true that in many of the cases cited general expressions which to some extent support counsel's contention occur, yet in none of them is the doctrine contended for by counsel applied to the extent which it is sought to apply it in the instant case.

The case of *Railway Co.* v. *Cappier,* supra, is clearly distinguishable from the case at bar, in that in that case the injury was caused through the negligence of the defendant, and for that reason a higher degree of care was imposed upon

the employees in caring for the injured person. That case is, however, very ably distinguished from one like the one at bar in *Riley* v. *G., C. & S. F. Ry. Co.* (Tex. Civ. App.) 160 S. W. 595.

The case of *Louisville & N. R. Co.* v. *Vanarsdell's Adm'r,* supra, has no application to the facts in this case. Nor is *Heddles* v. *Chicago & N. W. Ry.,* supra, applicable here. *Isabel* v. *Hannibal & St. J. R. R. Co.,* supra, is distinguished in later Missouri cases to which we shall refer hereinafter. *Rosenthal* v. *New York S. & W. R. Co.,* supra, applies the doctrine that where one is wrongfully upon the property of the defendant and is placed in a perilous situation by his own act, the employees of the defendant must refrain from willfully injuring him, and if they attempt to rescue the intruder from his perilous situation, the judgment of the employees may not be criticized or condemned merely because on reflection it may appear that if they had acted differently the result may have been otherwise. In that case the judgment for plaintiff was reversed in the appellate court upon the ground that the conduct of the employees was not considered by the trial court in the light of the circumstances prevailing at the time of the accident and injury. That case, therefore, clearly supports the contention of the defendant in this case.

The case of *Northern Cent. Ry. Co.* v. *State, etc.,* supra, is likewise distinguishable from the case at bar, in that the original injury was caused through the negligence of the railroad company. The case is also distinguished in *Riley* v. *Gulf C. & S. F. Co.,* supra, and in later Maryland cases to which we shall later refer.

*American Car & Foundry Co.* v. *Inzer,* supra, is a case decided by the Court of Appeals of Indiana. Inzer's widow obtained judgment in the court below, which judgment was affirmed by the Court of Appeals. The decision of the Court of Appeals was however, reversed by the Supreme Court of Indiana upon the ground that the complaint was defective. 172 Ind. 76, 87 N. E. 722. The case was again tried upon an amended complaint, in which the cause of action was predi-

cated upon the Indiana Employers' Liability Act, and judgment was again rendered in favor of the widow, which judgment was affirmed by the Indiana Court of Appeals in 53 Ind. App. 316, 101 N. E. 676. In that case the deceased was an employee of the defendant company and through his own fault was thrown on the rails of the track and one of the wheels of the car passed onto his leg and held him fast to the track. The deceased was lying across the rail and in front of the truck wheels. While thus lying in that position in front of the wheel, the conductor and superintendent of the defendant ordered the train moved forward. That movement caused the wheel to pass over the body of the deceased, which caused his death. In the position the deceased was lying on the track but one result was possible if the train was moved, and that was that the car wheel must pass over his body. In view of that fact, the court held that the question of the conductor's conduct was for the jury. No one, we think, could arrive at a different conclusion.

In *Dyche* v. *Vicksburg, Shreveport & Pac. R. R. Co.*, supra, it was held that the railroad company owed the duty of exercising ordinary care to a trespasser while caring for him after he was injured through his own fault. We shall refer to that case again hereinafter.

The other cases cited really have no application to the case at bar, and we shall not review them.

Referring, now, to the cases cited by defendant, the following, among others, sustain its contention: ' *Kirtley* v. *Railroad Co.* (C. C.) 65 F. 386-391; *Fischer* v. *Columbia & P. S. R. Co.*, 52 Wash. 462, 100 P. 1005; *Morris* v. *Georgia R. R. & B. Co.*, 131 Ga. 475, 62 S. E. 579; *Clark* v. *Colorado & N. W. R. Co.*, 165 F. 408, 91 C. C. A. 358, 19 L. R. A. (N. S.) 988; *Dull* v. *Cleveland, C., C. & St. L. Ry. Co.*, 21 Ind. App. 571, 52 N. E. 1013; *Stager* v. *Troy Laundry Co.*, 38 Or. 480, 63 P. 645, 53 L. R. A. 459; *Allen* v. *Hixson*, 111 Ga. 460, 36 S. E. 810; *De Vane* v. *Atlanta B. & A. R. Co.*, 4 Ga. App. 136, 60 S. E. 1079; *Matthews* v. *Carolina & N. W. Ry. Co.*, 175 N. C. 35, 94 S. E. 714, L. R. A. 1918C, 899; *Riley* v. *Gulf, C. & S. F. Ry. Co.* (Tex. Civ. App.) 160 S. W.

595; *Griswold* v. *Boston & M. R.*, 183 Mass. 434, 67 N. E. 354.

In *Kirtley* v. *Railroad Co.*, supra, in passing upon a situation somewhat similar to the one in the case at bar, the court said:

"We are not to judge of the care exercised under circumstances of this kind, by a deliberate retrospect of the facts, because we can never place ourselves, by a calm analysis of the features of these occurrences, in precisely the same frame of agitation as those who are actors in such events. If the engineer did all that reasonably occurred to him to do, confronted, as he was, by a pressing emergency, we cannot censure him because, after deliberate reflection over the events, we can point out something else which he might have done to have averted the calamity. The extremity of the situation was not of the engineer's making.  *  *  *  Nothing short of an injury willfully or wantonly inflicted, under such circumstances, should visit a liability upon a defendant."

In that case the defendant was killed while wrongfully on the railroad track. The court directed a verdict for the defendant, which was affirmed on appeal. If we substitute the switching crew in this case for the engineer in the case quoted from, we have precisely the situation that is discussed in that case. As already pointed out neither Mr. nor Mrs. Rainey has suggested anything that the railroad crew could or should have done in order to meet the situation.

They, however, and especially Mr. Rainey and plaintiff's counsel, urgently insist that the railroad crew should not have moved the train forward. In that connection they contend that in moving the train forward the automobile was also caused to move with the train, and that in that way Mrs. Rainey received the serious injuries which she suffered. After a careful search of the record, we have been unable to find anything from which a jury would have been justified in arriving at such a conclusion. That is, we do not mean that a jury could not have arrived at the conclusion that the automobile was moved forward, but we mean that there is nothing to indicate that Mrs. Rainey's injuries could in any way have been prevented. That they could have been is merely conjecture on the part of Mrs. and Mr. Rainey and their counsel.

Quite apart from the fact, however, that the train crew were not bound to act at their peril, and that if they did what in their judgment was proper, neither the court nor a jury is authorized to hold them liable for any reasonable mistake they may have made, there is no evidence which would justify a finding that they erred in what they did.

In *Stager* v. *Troy Laundry Co.*, supra, one of the employees had her hand and forearm caught in a mangle. She contended that her injuries were greatly aggravated by reason of the fact that the defendant, as the owner of the plant, did not know how to extricate her from her perilous and painful situation, and that the defendant did not timely release her, and hence she was caused to suffer unnecessary and protracted pain. The trial court submitted the case upon the theory that if the defendant failed to act so as to "minimize" or lessen the injuries, the jury should consider that fact in favor of the plaintiff. The Supreme Court of Oregon, in passing upon the instruction, said:

"This instruction is clearly erroneous, for the jury are thereby told that, even if plaintiff was at fault and brought the mischief upon herself, she was nevertheless entitled to recover, if the defendant failed to do any other act that would minimize her injury. We presume this was given in view of the testimony adduced from which it is argued that the defendant's managers were not sufficiently acquainted with the technical mechanism of the mangle to be able to release the plaintiff's hand as quickly as they would if better informed in relation thereto, thus prolonging her suffering and adding to her injury. Proprietors and managers are not required to possess themselves of technical and exact knowledge of the detailed mechanism and workings of machinery with a view to extricating persons from perils to which they may subject themselves through their own folly or negligence. So that it cannot be charged against the defendant that it was guilty of negligence in not having a person possessed of such knowledge convenient when the peril arose, so as to extricate the plaintiff from her dilemma. It is unusual to anticipate accident, and to provide for the most speedy relief when an exigency arises. There is no intimation, either by the evidence or the argument of counsel, that the defendant's managers willfully or wantonly prolonged the sufferings of the plaintiff, while it must be conceded that they did all they could, with their knowledge of the machinery, to extricate the plaintiff as quickly as possible."

In *Allen* v. *Hixson,* supra, the court said:

"As to so much of the petition as claims damages because the 'defendant negligently allowed petitioner's hand and wrist to remain between said roller and bar,' or because of the defendant's 'negligently failing * * * to effect her release,' we do not think a good cause of action is set forth. When an employee, without fault on the master's part, becomes placed in a dangerous or painful situation, the master is under no positive legal duty of exercising all reasonable care and diligence to effect such employee's speedy release. Being in no way responsible for the unfortunate occurrence, the master cannot be said to be guilty of a tort if he does not promptly take active steps in coming to the rescue. The only duty arising under such circumstances is one of humanity, and for a breach thereof the law does not, so far as we are informed, impose any liability."

*Allen* v. *Hixon* was approved and followed in *De Vane* v. *Atlanta B. & A. R. Co.,* 4 Ga. App. 136, 60 S. E. 1079.

In *Griswold* v. *Boston & M. R. Co.,* supra, the Supreme Judicial Court of Massachusetts, in discussing the principle of law applicable to the case at bar, in the course of the opinion says:

"But there is another view of this case which strikes at the foundation of the plaintiff's claim. Her counsel has referred us to no case which supports the proposition that if a person is injured through no fault of a railroad company, the latter owes a legal duty to the person injured to assist him. There is of course a moral duty, but in performing that duty, the company is not liable if one of its servants does not use his best judgment in affording the necessary assistance."

Further on in the opinion the court also reviews and distinguishes a number of the cases cited by counsel for plaintiff, and finally refers to *Dyche* v. *Vicksburg, Shreveport & Pac. R. Co.,* supra. In referring to that case the court says:

"We cannot accede to the doctrine of this case. If it is law, no humane or gratuitous act could be done without subjecting the doer of it to an action on the ground that the defendant ought to have acted more quickly or with more judgment."

The Dyche Case, so far as we have been able to discover, has not been followed or approved in any other case.

It is not necessary to quote further from the cases upon this question. In this connection we desire to state, however, that a number of the cases cited by plaintiff are distinguished

or modified in other cases emanating from the same courts. For example: In the case of *Little* v. *Carolina Cent. Ry. Co.*, 118 N. C. 1072, 24 S. E. 514, the doctrine contended for by the defendant is fully sustained, although in another case from the same court, which is reported in 55 L. R. A. 418, cited by plaintiff, expressions to the contrary occur. In *Williams* v. *Kansas City S. & M. R. R. Co.*, 96 Mo. 275, 9 S. W. 573, a later Missouri case than the one cited by plaintiff, the principle contended for by the defendant here is fully sustained. The same is true with respect to the case of *Barker* v. *H. & St. J. R. Co.*, 98 Mo. 50, 11 S. W. 254, another and later Missouri case. To the same effect is still a more recent case, namely, *Frye* v. *St. Louis, etc., Ry. Co.*, 200 Mo. 399, 400, 98 S. W. 566, 8 L. R. A. (N. S.) 1069. Again, in a Maryland case later than the one cited by plaintiff from 29 Md. 420, to wit, *B. & O. R. R. Co.* v. *State*, 62 Md. 479, 50 Am. Rep. 233, the doctrine announced in the cases cited by defendant is fully supported and applied. Moreover, the case of *Bittner* v. *Crosstown Ry. Co.*, 153 N. Y. 76, 46 N. E. 1044, 60 Am. St. Rep. 588, cited by plaintiff, fully sustains the principle contended for by the defendant.

In view that the precise question that is presented on this appeal is one of first impression in this jurisdiction, and that it is insisted by plaintiff's counsel that this case comes within the so-called "last clear chance" doctrine, we have felt justified in going into the question at some length. We have done so in order to make clear that while the question here involved may be related to the last clear chance doctrine, nevertheless the case at bar is not a last clear chance case. In a last clear chance case the defendant usually is negligent in not preventing the injury, which, by the exercise of ordinary care, he could have done; while in a case like the one at bar the railroad employees were called upon to extricate one who was wrongfully upon the premises and who through her own fault and through no fault of the employees was placed in a perilous situation. In such a case the judgment of the employees with respect to what is best to do must prevail unless it is clear, as it was in

the Indiana case referred to, that their acts must necessarily result in greater harm. We assert with perfect confidence that no disinterested lawyer would be willing to assert that under the undisputed facts of this case an action for damages could successfully be prosecuted to judgment against the train crew, or any one of them, for any act of commission or omission on their part in extricating the plaintiff from her perilous situation. If therefore an action could not successfully be maintained as against the train crew, or any one of them, how can one be maintained against the defendant, who is and can be liable only in case the employees were at fault?

We are unable to see how a jury could have arrived at a verdict in favor of the plaintiff unless they based the same upon mere conjecture. It is manifest, therefore, that if the case had been submitted to the jury, and they had returned a verdict in favor of the plaintiff, it would have been the duty of the district court, or, on appeal, of this court, to set the verdict aside as not supported by any substantial evidence. In view of that the district court committed no error in directing the verdict.

The judgment is therefore affirmed, with costs.

WEBER, C. J., GIDEON and CHERRY, JJ., and McCREA, District Judge, concur.

THURMAN, J., did not participate herein.